McMILLIN et al. v. BARTON-ROBISON CONVOY CO.

No. 28047.    April 5, 1938.

Rehearing Denied April 26, 1938.

Application for Leave to File Second Petition for Rehearing Denied May 10, 1938.

554

W. H. C. Taylor, for plaintiffs in error.

Butler, Brown & Rinehart, for defendant in error.

BAYLESS, V. C. J. Alma Witten Mc-Millin et al., as next of kin of William E. Witten, deceased, brought an action in the district court of Oklahoma county, against Barton-Robison Convoy Company, a corporation, the employer of the deceased, to recover damages for the wrongful death of deceased alleged to have resulted from negligence of the master. A jury was impaneled, but the court sustained a demurrer to plaintiffs' evidence, and they have appealed.

The deceased was murdered by robbers who were illegally in possession of the master's premises, and engaged in stealing an automobile. The deceased in going from one part of the premises to another apparently unexpectedly came upon the robbers' lookout and was slain in cold blood.

The basis of the plaintiffs' cause of action is the alleged failure of the master to furnish the deceased with a reasonably safe place to work. The master is charged with establishing its place of business in a community infested by criminals, and which was notorious for the number of crimes committed daily. It is charged that the master recognized the duty which it owed to its employees to protect them from danger because it employed a guard or night watchman, but on the occasion in question there was not a sufficient number of these guards, or watchmen, to afford proper protection. It is charged that the master was engaged in handling automobiles, and the prevalence of crime, involving these articles of commerce, has rendered the business one of hazard, requiring care in the protection of the employees employed

therein. In addition to this, it is charged that the master's manager was negligent in opening the door to the criminals when they knocked without first ascertaining their identity; and, that the guard employed was negligent in disarming himself prior to the robbery, and thereby rendering himself incapable of performing his duties at the time of the robbery—that is, to resist the intruders. There was, also, an allegation of failure to keep the premises properly lighted.

The trial court sustained the demurrer on the specific ground that there was no showing of negligence. Plaintiffs argue negligence on the part of the defendant and that the proof is sufficient to show the deceased was not furnished with a reasonably safe place to work. The defendant controverts this argument, and, in addition, argues that if by any stretch of the imagination it could be said that primary negligence had been shown, such negligence was not the proximate cause of the injury resulting in death; but that said injury was due solely to an act of an intervening, independent third party.

There must be primary negligence on the part of the defendant before a consideration of the proximate cause can be undertaken. Since the trial court based its judgment on the absence of primary negligence, and since we are of the opinion the trial court was correct in so doing, we will not undertake to consider the aspects of proximate cause.

It is elementary that a master must furnish his employees a reasonably safe place in which to work. It is equally elementary that the failure to discharge this duty constitutes negligence. Such negligence, however, has no distinguishing characteristics which make the problem of the determination of its existence or nonexistence different from any other negligence on the part of the master toward any employee. For this reason we disagree with the plaintiffs' contention that the issue of negligence is always one of fact for the jury. In the case of City of Tulsa v. Harman, 148 Okla. 117, 299 P. 462, we held in conformity with the general rule that the issue of negligence, or no negligence, was a question of law in the first instance for the court. In other words, when the plaintiff, in an action to recover damages suffered as the result of the alleged negligence of the defendant, has introduced his evidence and rested, and a demurrer to the evidence is interposed, the trial judge has a law question presented to him. He may judge that no evidence of negligence has been pre-

sented. He may judge that the evidence is of such character that the minds of men could not differ as to the failure of the plaintiff to establish actionable primary negligence on the part of the defendant. Having arrived at either of these law conclusions, he has determined an issue of law, and he must withdraw the case from the jury. Or he may judge that sufficient evidence at least to cause the minds of men to differ, or even evidence to a greater degree of certainty, has been introduced. Whereupon, having determined this question of law, it is his duty to submit the issue of fact to the jury. Therefore, if the evidence of the plaintiffs in this action was, in the opinion of the trial judge, insufficient to establish a duty and a violation of the duty, he correctly withdrew the case from the jury, subject of course to our right of review on appeal.

Let us examine the evidence. The sheriff of the county testified that about 80 per cent. of the crime of the county was committed in a six-mile area including the town. He gave the number of prisoners who had been delivered to our prisons from his county during his terms of office. It is a large number even for a populous county such as Ottawa. The records of a justice of the peace court in the town were offered, and they show a number of convictions on petty offenses involving fines or short jail sentences. It was shown that cars were stolen from the master before, at the time, and after the killing involved. The trial court was obliged to take judicial notice of the laws of the United States, and Oklahoma, relating to the crimes involving automobiles. The master had some knowledge of this threat to the property entrusted to his care as is witnessed by the presence of his armed guard and the use of additional guards on occasions.

The question of law is: Does this evidence establish as a matter of law that the master failed to furnish the employee a safe place to work as required by law? We are of the opinion it does not.

It is not contended that the duties which the deceased performed, or the manner in which he performed them, or the place in which he performed them, were not safe in every accepted or anticipated instance, save one. It is urged that the nature of the property handled, the prevalence of crime in the community, and the location of the business raised a duty which, presumably, would not have been raised in what we may term a more law-abiding community.

We are unable to see that an employer has a general duty to protect his employees from the assaults of criminals. We are likewise unable to see that there are any exceptional circumstances in this case which would give rise to such a duty. To so find would be tantamount to saying that the town of Picher is a condemned community. We would be saying, in legal effect, that those who live there and those who engage in business there are not exercising the prudence and judgment of ordinary people. To hold what the plaintiffs want us to hold would result in saying that every business man in the town of Picher is guilty of negligence toward those he employs and is answerable to them for their damages suffered as the result of the act of some criminals.

In addition to the general statement of the rule of a safe place to work stated in the Oklahoma cases, and in the cases from many other states, the plaintiffs rely upon Green v. Atlantic, etc., Ry. Co. (S. C.) 126 S. E. 441, 38 A. L. R. 1448, and the notes. See, also, Carter v. Atlantic, etc., Ry. Co., 109 S. C. 119, 95 S. E. 357, 11 A. L. R. 1411; Fraser v. C., R. I. & P. Ry. Co., 101 Kan. 122, 165 P. 831, L. R. A. 1917f, 749; 31 Neg. & Comp. C. A. 623, et seq., note B, and 32 Neg. & Comp. C. A. 373, et seq., note B.

In interpreting and applying our Workmen's Compensation Law, which is a statutory scheme of remedial social legislation, we have had occasion to consider the master's liability for injuries inflicted upon employees by the criminal acts of strangers. The differences between the approach to the determination of a master's liability at law for injuries by employees as a result of the master's negligence and the approach to the determination of the master's liability under the Workmen's Compensation Law are well known, and are fundamental. The latter approach is much more liberal in all of its aspects. With all of this in mind, we have held that a master is not liable for compensation to the employee whose injury resulted from a gunshot wound inflicted by a bandit. See I. T. I. O. Co. v. Lewis, 165 Okla. 26, 24 P.2d 647. It was pointed out that, although the injury was sustained while the employee was on duty, there was no rational causal relationship between the employment and the injury.

Judgment affirmed.

WELCH, PHELPS, CORN, and HURST, JJ., concur.