Melvin FLECK, Plaintiff and Appellant,

v.

ANG COAL GASIFICATION CO., a foreign corporation, Defendant and Appellee.

Civ. No. 940062.

Supreme Court of North Dakota.

Oct. 3, 1994.

David C. Thompson (argued), Grand Forks, Jeanette T. Boechler, Boechler Law Firm, Fargo, and Irvin B. Nodland, Irvin B. Nodland, P.C., Bismarck, for plaintiff and appellant.

Randall J. Bakke, Smith Bakke & Hovland, Bismarck, for defendant and appellee.

VANDE WALLE, Chief Justice.

Melvin Fleck appealed from a summary judgment dismissing his personal injury action against ANG Coal Gasification Company [ANG]. We affirm.

ANG operates a coal gasification plant in Beulah, North Dakota. In 1984, ANG hired

Ceramic Cooling Tower Company [CCT] to replace plastic tiles with ceramic tiles in the water cooling towers at ANG's plant. The parties agree that CCT was an independent contractor.

Fleck was an employee of CCT. Part of Fleck's job included removing the existing plastic tiles from the inside of the water cooling towers. These plastic tiles were coated with a black, slimy residue from the water which flowed through the towers when they were operational. Because of high humidity and dirty working conditions in the towers, CCT's employees were provided face masks and rubber "slickers," boots, and gloves. Although he had a history of asthma, Fleck did not wear his face mask.

On July 30, 1984, Fleck experienced respiratory difficulties and collapsed while working in the towers. Fleck subsequently saw a doctor, who diagnosed Fleck's difficulties as asthma, rhinitis, and bronchitis. The doctor prescribed medication and instructed Fleck to return in two months for a follow-up visit. Fleck did not return for the follow-up visit. Fleck applied for and received workers compensation benefits for the July 30 incident.

Fleck brought this action against ANG in 1990, asserting that he had developed occupational asthma as a result of exposure to hazardous chemicals while working in the water cooling towers at ANG's plant. ANG moved for summary judgment, asserting that it had no duty to provide for Fleck's safety on the job, that there were no hazardous substances present in the towers, and that Fleck's injuries were not caused by any exposure while working at the plant. The trial court determined that ANG, as an employer of an independent contractor, had not retained such control of the work so as to incur a duty for Fleck's safety; that the work was not inherently dangerous and did not involve peculiar risk; and that Fleck had failed to present any evidence that hazardous chemicals which might have caused his injuries were present in the towers. The court ordered entry of summary judgment dismissing Fleck's action and awarded costs to ANG.

The following issues are dispositive of the appeal:

I. Did ANG retain sufficient control over the work to create a duty to exercise that control with reasonable care under Section 414, Restatement (Second) of Torts?

II. Do the rules imposing vicarious liability upon one who hires an independent contractor to perform inherently dangerous work, or work involving peculiar risk, provide protection to employees of the independent contractor?

III. Is a party who prevails on summary judgment entitled to recover costs and disbursements?

## I. RETAINED CONTROL—SECTION 414

■ Generally, one who employs an independent contractor is not liable for the acts or omissions of the independent contractor. *Madler v. McKenzie County*, 467 N.W.2d 709 (N.D.1991); *Schlenk v. Northwestern Bell Telephone Co.*, 329 N.W.2d 605 (N.D.1983); Restatement (Second) of Torts § 409 (1965). However, Section 414 of the Restatement (Second) of Torts creates liability when the employer retains control over the work:

"§ 414. Negligence in Exercising Control Retained by Employer

"One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

■ We have previously recognized a cause of action based upon retained control under Section 414. See *Zimprich v. Broekel*, 519 N.W.2d 588 (N.D.1994); *Madler v. McKenzie County, supra*; *Schlenk v. Northwestern Bell Telephone Co., supra*; *Peterson v. City of Golden Valley*, 308 N.W.2d 550 (N.D.1981). Employees of an independent contractor fall within the protection of Section 414, and an employer of an independent contractor owes a duty to the independent contractor's employees to exercise the retained control with reasonable care. *Madler, supra*. Section 414 does not make the em-

ployer vicariously liable for the acts of the independent contractor, but creates an independent basis of liability for the employer's failure to exercise retained control with reasonable care. *Zimprich, supra; Madler, supra.*

The liability created by Section 414 arises only when the employer retains the right to control the method, manner, and operative detail of the work; it is not enough that the employer merely retains the right to inspect the work or to make suggestions which need not be followed. Comment c to Section 414 explains the difference:

"In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."

See also *Zimprich, supra; Madler, supra; Schlenk, supra.*

We recognized in *Madler* that the duty created by Section 414 may arise in two ways: through express contractual provisions retaining the right to control the operative detail of some part of the work, or through the employer's actual exercise of such retained control at the jobsite. Fleck does not assert that ANG retained control over any operative details of the work in the provisions of the contract, and concedes that the contract gives CCT full control over the manner and method of performing the work.

Fleck asserts, however, that ANG exercised actual control over the work at the jobsite sufficient to create a duty under Section 414.

Fleck relies upon evidence of three factors which, he asserts, demonstrates ANG's control over CCT's performance of the contract: (1) ANG provided the rubber "slickers," gloves, and boots worn by CCT's employees on the jobsite; (2) ANG employees periodically tested the air in the cooling towers to assure there was sufficient oxygen; and (3) an ANG employee periodically walked through the cooling towers to view the work. The parties dispute these issues, and there is conflicting evidence on each. In accordance with our law on summary judgment, all favorable inferences must be drawn in favor of Fleck as the party opposing summary judgment, and we therefore assume the truth of Fleck's assertions.[1] See, e.g., *Farmers Union Oil Co. v. Harp,* 462 N.W.2d 152 (N.D.1990).

However, even assuming Fleck's factual assertions are true, those facts do not give rise to a duty under Section 414. Fleck testified that he got "the rain gear and the gloves" from the CCT foreman, who in turn got them from ANG. However, Fleck fails to point out any evidence that ANG required that these items be worn by CCT's workers. Accordingly, ANG's conduct can be viewed, at best, as a "suggestion" or "recommendation" regarding safety equipment that CCT did not necessarily need to follow. See Comment c, Restatement (Second) of Torts § 414; *Zimprich, supra; Madler, supra; Schlenk, supra.*

Similarly, ANG's testing for sufficient oxygen in the water cooling towers, and providing that information to CCT, did not constitute retention of control over the operative detail of the work. Fleck suggests, in a conclusory fashion, that ANG's testing constituted control over "the handling of safety at the work site." However, Fleck wholly

---

**1.** ANG particularly disputes Fleck's claim that it provided the slickers, gloves, and boots. Fleck's only "evidence" in support of this factual conclusion is deposition testimony of Fleck and a coworker in which they speculate, with no apparent basis in personal knowledge, that ANG provided this equipment. The admissibility and pro- bative value of this "evidence" is questionable. ANG employees and CCT's on-site supervisor testified in depositions that CCT supplied all of the safety equipment, including the slickers, gloves, and boots. Nevertheless, we will, on summary judgment, give Fleck the benefit of all inferences and treat his factual claims as true.

fails to explain how ANG's taking of air samples correlates to retained control over the method and manner of performing the work. We agree with the trial court that the fact ANG "supplied analytical data concerning the material composition of the substances in the cooling towers" does not constitute retained control sufficient to impose liability under Section 414.

Finally, Fleck urges that ANG's daily inspection of the work constituted retained control over the work. By Fleck's own testimony, this inspection consisted of an ANG "plant supervisor ... [who] [c]hecked on us once in a while ... to see how the job was going." There was no evidence that this ANG employee directly supervised or controlled any aspect of the work. This clearly amounts to mere inspection and monitoring to assure compliance with the contract, which does not give rise to liability under Section 414. See *Zimprich, supra;* Comment c, Restatement (Second) of Torts § 414.

■ Summary judgment is appropriate, even if there are disputed factual issues, if resolution of the disputed facts would not alter the result. *Aaland v. Lake Region Grain Cooperative,* 511 N.W.2d 244 (N.D. 1994). Giving Fleck the benefit of all inferences and assuming the truth of his factual assertions, there is still no evidence that ANG retained control over the operative detail of any part of the work contracted to CCT. Accordingly, no duty arose under Section 414 as a matter of law, and summary judgment was appropriate.

## II. INHERENT DANGER AND PECULIAR RISK

■ Fleck asserts that the work CCT performed was inherently dangerous and involved peculiar risks, and that ANG is therefore vicariously liable for CCT's conduct under Sections 416 and 427 of the Restatement (Second) of Torts. Those sections provide exceptions to the general rule of employer non-liability for the acts of an independent contractor:

"§ 416. Work Dangerous in Absence of Special Precautions

"One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

"§ 427. Negligence as to Danger Inherent in the Work

"One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger."

We have previously recognized causes of action based upon Sections 416 and 427. See *McLean v. Kirby Co.,* 490 N.W.2d 229 (N.D. 1992); *Schlenk, supra; Peterson, supra.*

The dispositive issue is whether the protections afforded by Sections 416 and 427, making one who employs an independent contractor vicariously liable under certain circumstances for physical harm to "others," extend to the employees of the independent contractor.[2] Fleck asserts that we have al-

2. The Restatement provides little guidance on the meaning of "others" in this context. However, a Special Note included in an early tentative draft of the Restatement would have clarified that employees of independent contractors were specifically excluded:

"[I]t is still largely true that the defendant has no responsibility to the contractor's servants. One reason why such responsibility has not developed has been that the workman's recovery is now, with relatively few exceptions, reg- ulated by workmen's compensation acts, the theory of which is that the insurance out of which the compensation is to be paid is to be carried by the workman's own employer, and of course premiums are to be calculated on that basis. While workmen's compensation acts not infrequently provide for third-party liability, it has not been regarded as necessary to impose such liability upon one who hires the contractor, since it is to be expected that the cost of the workmen's compensation insurance

ready held in *Schlenk* and *Peterson* that those sections do apply to employees of independent contractors. In those cases, however, we specifically stated that we were *not* resolving that issue:

> "The parties have urged this court to decide whether or not the word 'others' as used in these sections includes employees of an independent contractor, so as to allow the cause of action against Bell. We deemed it unnecessary to decide the question in *Peterson v. City of Golden Valley,* 308 N.W.2d 550, 554 (N.D.1981). We again decline to decide the issue because, even if we were to accept Schlenk's contention that employees of an independent contractor fall within the meaning of the term in our State ... we agree with the district court that the evidence does not establish that Bell owed a duty to Schlenk under any of the theories posited, and, thus, Schlenk could not prevail as a matter of law."

*Schlenk, supra,* 329 N.W.2d at 607–608 (footnote and citations omitted); see also *Peterson, supra.*

Of those jurisdictions which have considered the issue, the vast majority hold that employers of independent contractors are not vicariously liable to the employees of the independent contractor under Sections 416 and 427. See, e.g., *Morris v. City of Soldotna,* 553 P.2d 474 (Alaska 1976); *Jackson v. Petit Jean Electric Co-op.,* 270 Ark. 506, 606 S.W.2d 66 (1980); *Privette v. Superior Court,* 5 Cal.4th 689, 854 P.2d 721, 21 Cal.Rptr.2d 72 (1993); *Ray v. Schneider,* 16 Conn.App. 660, 548 A.2d 461 (1988); *Peone v. Regulus Stud Mills, Inc.,* 113 Idaho 374, 744 P.2d 102 (1987); *Johns v. New York Blower Co.,* 442 N.E.2d 382 (Ind.Ct.App.1982); *Dillard v. Strecker,* 255 Kan. 704, 877 P.2d 371 (1994); *King v. Shelby Rural Electric Cooperative*

*Corp.,* 502 S.W.2d 659 (Ky.1973), *cert. denied,* 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 235 (1974); *Rowley v. City of Baltimore,* 305 Md. 456, 505 A.2d 494 (1986); *Vertentes v. Barletta Co.,* 392 Mass. 165, 466 N.E.2d 500 (1984); *Conover v. Northern States Power Co.,* 313 N.W.2d 397 (Minn.1981); *Zueck v. Oppenheimer Gateway Properties, Inc.,* 809 S.W.2d 384 (Mo.1991); *Anderson v. Nashua Corp.,* 246 Neb. 420, 519 N.W.2d 275 (1994); *Sierra Pacific Power Co. v. Rinehart,* 99 Nev. 557, 665 P.2d 270 (1983); *Whitaker v. Norman,* 75 N.Y.2d 779, 551 N.E.2d 579, 552 N.Y.S.2d 86 (1989); *Curless v. Lathrop Co.,* 65 Ohio App.3d 377, 583 N.E.2d 1367 (1989); *Tauscher v. Puget Sound Power and Light Co.,* 96 Wash.2d 274, 635 P.2d 426 (1981); *Wagner v. Continental Casualty Co.,* 143 Wis.2d 379, 421 N.W.2d 835 (1988); *Jones v. Chevron U.S.A., Inc.,* 718 P.2d 890 (Wyo.1986). Two federal courts, construing North Dakota law, have concluded that we would follow the majority view. See *Olson v. Pennzoil Co.,* 943 F.2d 881 (8th Cir.1991); *Ackerman v. Gulf Oil Corp.,* 555 F.Supp. 93 (D.N.D.1982).

The minority view, adopted in a handful of jurisdictions, holds that employees of the independent contractor are included within the protections of Sections 416 and 427. See, e.g., *Lindler v. District of Columbia,* 502 F.2d 495 (D.C.Cir.1974); *Makaneole v. Gampon,* 70 Haw. 501, 777 P.2d 1183 (1989); *Giarratano v. Weitz Co.,* 259 Iowa 1292, 147 N.W.2d 824 (1967); *Phillips v. Mazda Motor Manufacturing (USA) Corp.,* 204 Mich.App. 401, 516 N.W.2d 502 (1994); *Vannoy v. City of Warren,* 15 Mich.App. 158, 166 N.W.2d 486 (1968); *Elliott v. Public Service Co.,* 128 N.H. 676, 517 A.2d 1185 (1986); *Lorah v. Luppold Roofing Co.,* 424 Pa.Super. 439, 622 A.2d 1383 (1993). California, long one of the leading minority view states, recently overruled its prior cases and adopted the majori-

---

will be included by the contractor in his contract price for the work, and so will in any case ultimately be borne by the defendant who hires him.

"Again, when the Sections in this Chapter speak of liability to 'another' or 'others,' or to 'third persons,' it is to be understood that the employees of the contractor, as well as those of the defendant himself, are not included."

Restatement (Second) of Torts, Special Note to Ch. 15 (Tentative Draft No. 7, 1962), *quoted in*

---

*Zueck v. Oppenheimer Gateway Properties, Inc.,* 809 S.W.2d 384, 389–390 (Mo.1991). The Special Note was ultimately left out of the final draft, and, as Dean Prosser explained, the Restatement took a "strictly neutral position" because of the lack of uniformity within the various workers compensation acts. See "Discussion of Restatement of Law Second, Torts," 39 A.L.I.Proc. 244–249 (1962), *quoted in Rowley v. City of Baltimore,* 305 Md. 456, 505 A.2d 494, 502–503 n. 9 (1986).

ty view. See *Privette v. Superior Court, supra.*

Courts adopting the majority view have outlined several well-reasoned and persuasive policy arguments in support of their holdings that employees of the independent contractor are not protected under Sections 416 and 427. Most of these policy reasons are based upon the availability of workers compensation benefits to the employee.

Several courts have noted that the primary purpose underlying the Restatement sections creating vicarious liability is to assure compensation for injured persons. See, e.g., *Sloan v. Atlantic Richfield Co.,* 552 P.2d 157 (Alaska 1976); *Privette v. Superior Court, supra; Peone v. Regulus Stud Mills, Inc., supra; Wagner v. Continental Casualty Co., supra.* We have indicated that the purpose of the peculiar risk rule is to ensure that innocent plaintiffs will not be left remediless while the owner is free to disclaim responsibility by entrusting the work to an independent contractor. *McLean v. Kirby Co., supra.* Thus, the policy concern which is the subject of Sections 416 and 427—assuring a remedy for injured "others"—is already satisfied when the injured party receives workers compensation benefits. The California Supreme Court rationalized the policy concern in *Privette v. Superior Court, supra,* 21 Cal.Rptr.2d at 74, 854 P.2d at 723:

> "When an employee of the independent contractor hired to do dangerous work suffers a work-related injury, the employee is entitled to recovery under the state's workers' compensation system. That statutory scheme, which affords compensation regardless of fault, advances the same policies that underlie the doctrine of peculiar risk. Thus, when the contractor's failure to provide safe working conditions results in injury to the contractor's employee, additional recovery from the person who hired the contractor—a nonnegligent party—advances no societal interest that is not already served by the workers' compensation system."

See also *Zueck v. Oppenheimer Gateway Properties, Inc., supra;* Edward J. Henderson, *Liability to Employees of Independent Contractors Engaged in Inherently Dangerous Work: A Workable Workers' Compensation Proposal,* 48 Fordham L.Rev. 1165 (1980). The Idaho Supreme Court observes:

> "To the extent that workmen's compensation is the preferred remedy for occupational injuries, it does appear anomalous and fortuitous [sic] to allow an employee to recover in tort from a third party owner when the accident arises out of and in the course of employment."

*Peone v. Regulus Stud Mills, Inc., supra,* 744 P.2d at 106.

Furthermore, many courts recognize that, because the cost of workers compensation premiums are necessarily included in the contract price, the employer of the independent contractor has indirectly paid those premiums and should be protected by the exclusive remedy provisions in the workers compensation laws. See, e.g., *Vagle v. Pickands Mather & Co.,* 611 F.2d 1212 (8th Cir.1979) (applying Minnesota law), *cert. denied,* 444 U.S. 1033, 100 S.Ct. 704, 62 L.Ed.2d 669 (1980); *Privette v. Superior Court, supra; Dillard v. Strecker, supra; King v. Shelby Rural Electric Cooperative Corp., supra; Rowley v. City of Baltimore, supra; Vertentes v. Barletta Co., supra; Zueck v. Oppenheimer Gateway Properties, Inc., supra; Wagner v. Continental Casualty Co., supra; Jones v. Chevron U.S.A., Inc., supra;* see also Section 65–01–02(15)(c), N.D.C.C. (a general contractor is liable for workers compensation premiums for the employees of a subcontractor or independent contractor if the subcontractor or independent contractor fails to pay the premiums). The Washington Supreme Court explains:

> "The employer's liability for damage resulting from the negligence of the independent contractor is limited to third parties largely because the employer has in a sense already assumed financial responsibility for the injuries to the employees in that the contract he or she pays to the independent contractor necessarily includes the costs of the insurance premiums that the independent contractor must pay for workers' compensation coverage.... The employee already has a remedy; one which the owner has paid for."

*Tauscher v. Puget Sound Power and Light Co., supra,* 635 P.2d at 430 (citations omitted).

Courts have also noted the incongruous result if an employer of an independent contractor were subjected to greater liability for injuries to the independent contractor's employees than if the employer had used its own employees to perform the dangerous work:

"[T]he principal employer should be subject to the same liability when the work is performed by employees of an independent contractor as when the work is performed by the principal employer's own employees. If the principal employer uses his own employees, he is subject to worker's compensation payments, not tort liability. If the principal employer incurs tort liability when he hires an independent contractor, the principal employer would, for reasons of cost, prefer to use his own employees, who may be inexperienced, rather than employ an independent contractor skilled in the task. Thus, several courts conclude that to impose tort liability on the principal employer would have unfavorable consequences to the principal employer, the independent contractor, the employees and the public."

*Wagner v. Continental Casualty Co., supra,* 421 N.W.2d at 842. See also *Privette v. Superior Court, supra; King v. Shelby Rural Electric Cooperative Corp., supra; Tauscher v. Puget Sound Power and Light Co., supra; Jones v. Chevron U.S.A., Inc., supra.* The California Supreme Court has also noted a corresponding incongruity:

"When an independent contractor causes injury to the contractor's own employee, the Act's 'exclusive remedy' provision shields the contractor from further liability for the injury. Yet, under the expansive view of the peculiar risk doctrine that has been adopted in California and a minority of other jurisdictions, the person who hired the independent contractor can, for the same injury-causing conduct of the contractor, be held liable in a tort action for the injuries to the contractor's employee. Because this expansive view produces the anomalous result that a nonnegligent per-

son's liability for an injury is greater than that of the person whose negligence actually caused the injury, it has been widely criticized."

*Privette v. Superior Court, supra,* 21 Cal. Rptr.2d at 78–79, 854 P.2d at 727–728. The result is that the minority view penalizes employers who hire experienced independent contractors with trained employees to perform dangerous work, instead encouraging the employer to use its own unskilled, untrained employees. See *Privette v. Superior Court, supra; King v. Shelby Rural Electric Cooperative Corp., supra; Tauscher v. Puget Sound Power and Light Co., supra; Jones v. Chevron U.S.A., Inc., supra.* The majority rule, which encourages the hiring of trained professionals with special expertise to perform work that is inherently dangerous or encompasses a peculiar risk, better promotes the dual policy concerns of safety to the general public and safety to those performing the work:

"Independent contractors are frequently, if not usually, hired because the landowner is aware of his own lack of expertise and seeks to have the work performed as safely and efficiently as possible by hiring those possessing the expertise he lacks.

"If the landowner chooses to avoid the additional liability imposed by the inherently dangerous exception, he may choose to direct his own employees to do the work despite his and their lack of expertise. That simple choice limits the landowner's exposure to that provided under worker's compensation. But that choice also increases the risk of injury to the employees and to innocent third parties.

"The anomaly is apparent now. By permitting employees of independent contractors to invoke the inherently dangerous doctrine, the law takes the distorted position of (1) rewarding landowners who, despite their own lack of expertise, choose to perform work negligently resulting in injury to workers, (2) increasing risks to innocent third parties and (3) punishing landowners who seek expert assistance in an effort to avoid liability for injury!"

*Zueck v. Oppenheimer Gateway Properties, Inc., supra,* 809 S.W.2d at 387–388 (footnote omitted).

Courts have also recognized valid reasons for distinguishing between members of the general public injured by worksite negligence and injured employees of an independent contractor:

> "Members of the public, whose proximity to danger would be merely coincidental, would probably be unaware of any danger until it struck; hence, there is no way they could adequately protect or insure themselves against harm. Employees at the work site, on the other hand, would possess some knowledge with respect to the nature of the project and thus could choose whether they wished to be exposed to a dangerous activity. If they did participate in such an endeavor, their rate of pay would usually reflect the risk involved. In addition, they could take steps to avoid injury by acting carefully and would be protected statutorily by employer liability and the workmen's compensation act."

*Morris v. City of Soldotna, supra,* 553 P.2d at 481–482. This reasoning was further explained in *Jackson v. Petit Jean Electric Co-op., supra,* 606 S.W.2d at 69:

> "The exception is grounded in a recognition that the possibility of harm to others is so great when the work activity is inherently dangerous that the law tolerates it only on terms of insuring the public against injury. We impose vicarious liability under these circumstances to insure that the public has legal access to a financially responsible party. The exception was obviously intended to protect those who have no direct involvement with the hazardous activity, are only incidentally exposed to its risks and have no direct means of insuring themselves against loss. Since employees of an independent contractor are directly involved in the hazardous activity, have knowledge of the risks and are insured against injury by worker's compensation, we perceive no sound justification for expanding the exception to include persons it surely was not designed to protect."

See also *Ackerman v. Gulf Oil Corp., supra; Ray v. Schneider, supra; Dillard v. Strecker, supra; Wagner v. Continental Casualty Co., supra.*

It has also been recognized that permitting recovery by the employees of independent contractors would create an "unwarranted windfall," and would "exempt a single class of employees, those who work for independent contractors, from the statutorily mandated limits of workers' compensation." *Privette v. Superior Court, supra,* 21 Cal.Rptr.2d at 80, 854 P.2d at 729. The Missouri Supreme Court observes:

> "The application of the inherently dangerous exception also distorts workers' compensation laws. The exception, if extended to employees of an independent contractor, permits a limited class of injured workers—those who can convince a judge that their work for an independent contractor was inherently dangerous—to avoid the limitations of workers' compensation. This is contrary to the fact that the economic system permits workers who presume to undertake dangerous work to bargain for an enhanced reward for assuming the danger and despite the intended exclusivity of workers' compensation as an injured worker's remedy."

*Zueck v. Oppenheimer Gateway Properties, Inc., supra,* 809 S.W.2d at 390 (footnote omitted).

One final reason also supports our adoption of the majority view. The workers compensation act in effect represents a legislatively created "settlement" of claims between injured workers and their employers. Both sides have forfeited certain common-law rights to implement the social purposes of the act. See *Barry v. Baker Electric Cooperative Inc.,* 354 N.W.2d 666 (N.D.1984); *Breitwieser v. State,* 62 N.W.2d 900 (N.D.1954); 1 Larson, Law of Workmen's Compensation § 1.10 (1993). The employee gives up the right to sue the employer for negligently inflicted injuries, in exchange for sure and certain benefits for all workplace injuries, regardless of fault. See Sections 65–01–01 and 65–01–08, N.D.C.C.; *Privette v. Superior Court, supra,* 21 Cal.Rptr.2d at 78, 854 P.2d at 727 (labeling this the "compensation bar-

gain"); *Zueck v. Oppenheimer Gateway Properties, Inc., supra.*

We have previously held that release of a servant for the underlying negligent conduct also releases a master's vicarious liability based upon the same conduct. *Horejsi v. Anderson,* 353 N.W.2d 316, 318 (N.D.1984). The same rationale applies here: the underlying negligent conduct of the independent contractor has been statutorily "released," and accordingly there can be no vicarious liability based upon that conduct. To hold otherwise would effectively permit a double recovery for the independent contractor's conduct, in violation of the exclusive remedy provisions of the workers compensation act.

The Supreme Court of Nebraska recently relied upon this reasoning in adopting the majority view:

"[I]n the context of vicarious liability, a principal cannot be liable where the agent is immune. Since Bunch, by virtue of the exclusivity provision of the workers' compensation laws, is immune from suit, Nashua, its employer-principal, necessarily cannot be held vicariously liable."

*Anderson v. Nashua Corp., supra,* 519 N.W.2d at 285.

Relying upon the foregoing reasons, we adopt the majority view and hold that an employer of an independent contractor is not vicariously liable to the independent contractor's employees under Sections 416 and 427 of the Restatement (Second) of Torts.[3]

## III. COSTS

■ Fleck asserts that the court erred in awarding to ANG costs and disbursements, including expenses of depositions. Fleck argues that Section 28–26–06, N.D.C.C., which allows recovery of disbursements, applies only when there has been a trial in the action, not when the action is dismissed by summary judgment. Thus, Fleck asserts,

ANG is limited to recovering the statutory costs under Section 28–26–02(2), N.D.C.C., which allows "[t]o the defendant, for all proceedings before trial, five dollars."

Fleck's novel assertion stems from his misreading of Section 28–26–06(2), N.D.C.C., which provides:

"In all actions and special proceedings, the clerk shall tax as a part of the judgment in favor of the prevailing party his necessary disbursements as follows:

\*　　\*　　\*　　\*　　\*　　\*

"2.　The necessary expenses of taking depositions and of procuring evidence necessarily used or obtained for use on the trial. . . ."

■ The statute does not limit deposition expenses to those actually used at trial, but specifically includes those *"obtained for use on the trial."* If, as Fleck asserts, those expenses were allowable only when the deposition is actually used at a trial, the latter language would be wholly superfluous. In construing a statute, we must give meaning to every word, phrase, and sentence. *In re J.D.,* 494 N.W.2d 160 (N.D.1992); *Flermoen v. North Dakota Workers Compensation Bureau,* 470 N.W.2d 220 (N.D.1991).

■ Furthermore, in interpreting a statute we must presume that the Legislature did not intend an absurd or ludicrous result or unjust consequences. *Thompson v. Danner,* 507 N.W.2d 550 (N.D.1993). The necessary consequence of Fleck's interpretation would be that a plaintiff who has a facially valid claim sufficient to get past summary judgment would be liable for pretrial expenses under Section 28–26–06, but a plaintiff whose claim is so devoid of factual support that it is dismissed at the summary judgment stage would be immune from liability for the pretrial expenses his marginal

---

3.　There is no inconsistency between our conclusion that an independent contractor's employees are not protected by Sections 416 and 427, yet are protected under Section 414. Sections 416 and 427 create vicarious liability for the independent contractor's acts and omissions, and therefore conflict with the exclusive remedy provisions of the workers compensation act. Section 414, however, creates an independent duty, not

vicarious liability, on the party who hires the independent contractor. See *Zimprich, supra; Madler, supra.* Because the owner/employer is being held liable for its own negligence under Section 414, the action by the independent contractor's employee is specifically authorized under the workers compensation act. See Section 65–01–09, N.D.C.C.; *Barsness v. General Diesel & Equipment Co.,* 422 N.W.2d 819 (N.D.1988).

claim had generated. Clearly, the Legislature did not intend such an absurd and unjust result.

We construe Section 28-26-06(2), N.D.C.C., to apply if the deposition is actually used at trial, or if the deposition was obtained with the intent to use it on the trial, regardless of whether a trial is ultimately held. The district court therefore did not err in awarding costs and disbursements in excess of five dollars to ANG.

We have considered the remaining issues raised by Fleck and find them to be without merit. The judgment is affirmed.

SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.