2002 OK CIV APP 80

Carroll YOUNG and Alvin Young, Individually and as Co–Administrators of the Estate of Ataienza Alvin Young, Deceased, Plaintiffs/Appellants,

v.

BOB HOWARD AUTOMOTIVE, INC., an Oklahoma corporation, d/b/a Bob Howard Mitsubishi, Defendant/Appellee.

No. 95,849.

Court of Civil Appeals of Oklahoma, Division No. 4.

July 23, 2002.

Roland V. Combs, III, Roland V. Combs & Associates, Oklahoma City, OK, for Plaintiffs/Appellants.

Reggie N. Whitten, Kent R. McGuire, Derrick T. DeWitt, Whitten, Nelson, McGuire, Wood, Terry, Roselius & Dittrich, Oklahoma City, OK, for Defendant/Appellee.

Opinion by JOE C. TAYLOR, Presiding Judge.

¶ 1 Plaintiffs, Carroll and Alvin Young (Parents), appeal an order of the trial court granting summary judgment to Defendant, Bob Howard Automotive (Bob Howard). In this negligence action arising out of the death of Parents' son, Ataienza Alvin Young (A.J.), the issue is whether the uncontroverted facts show that Bob Howard owed a duty to protect A.J. from the criminal acts of a third party. We find that they do not and affirm the trial court's order.

## FACTS

¶ 2 Bob Howard contracted with Golden Eagle Security, Inc., for security services to be provided at its automobile dealership. Golden Eagle provides three different types of security service: unarmed officers, armed officers, and patrol service. Bob Howard chose the first type of service, two unarmed officers. Bob Howard chose unarmed security officers because it wanted them to be present at the dealership lot, patrol the lot, and contact police in the event of trouble.

¶ 3 A.J. was employed by Golden Eagle Security as a security guard and was assigned to one of the unarmed posts at Bob Howard's dealership. On the night of August 24, 1996, A.J. was working his assigned night shift when an intruder, who came onto Bob Howard's premises to steal cars, murdered A.J. His parents brought this negligence action against Bob Howard. Bob Howard moved for summary judgment, arguing that it did not owe a duty to protect A.J. from the criminal acts of third parties. The trial court granted summary judgment to Bob Howard, and Parents appeal.

## ANALYSIS

¶ 4 In a negligence action, "the first prerequisite must be to establish the existence of a legally cognizable duty." *First Nat'l Bank in Durant v. Honey Creek Entertainment Corp.*, 2002 OK 11, ¶ 17, 54 P.3d 100 (petition for rehearing pending). Whether one person owes a duty to another is a question of law and often depends on the relationship of the parties. *Id.* "The court decides whether a defendant stands in such a relationship to a plaintiff that the defendant owes an obligation of reasonable conduct for the benefit of the plaintiff." *Delbrel v. Doenges Bros. Ford, Inc.*, 1996 OK 36, ¶ 7, 913 P.2d 1318, 1320–21. We review questions of law *de novo;* meaning, we have "plenary, independent, and non-deferential authority to re-examine the [trial court's] legal rulings." *Bouziden v. Alfalfa Elec. Co-op., Inc.*, 2000 OK 50, ¶ 14, 16 P.3d 450, 456.

¶ 5 "Summary judgment is appropriate where it appears there is no substantial controversy as to any material fact and one

party is entitled to judgment as a matter of law." *Allen v. Lynn Hickey Dodge, Inc.*, 2001 OK 93, ¶ 5, 39 P.3d 781, 783. The summary judgment process "is a search for undisputed material facts that would support but a single inference which favors the movant." *Shamblin v. Beasley*, 1998 OK 88, ¶ 9, 967 P.2d 1200, 1208. Our standard of review on an appeal from a summary judgment is clear. Although a trial court considers factual matters when deciding whether summary judgment is appropriate, its ultimate decision is purely legal: whether one party is entitled to judgment as a matter of law because there are no material disputed facts. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. Therefore, our standard of review on appeal is *de novo*. *Id.; see also Copeland v. The Lodge Enter., Inc.*, 2000 OK 36, ¶ 8, 4 P.3d 695, 699. "Like a trial court, an appellate court examines the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact and, as in the trial court, all inferences and conclusions arising from the evidentiary materials are viewed in a light most favorable to the non-moving party." *Cranford v. Bartlett*, 2001 OK 47, ¶ 2, 25 P.3d 918, 920 (citation omitted).

### A. Bob Howard's duty to protect A.J. from the criminal acts of a third party.

¶ 6 An independent contractor doing work on another's premises is an invitee. *McKinney v. Harrington*, 1993 OK 88, ¶ 8, 855 P.2d 602, 604. As the invitor, the owner owes the independent contractor and its employees "a duty to keep the premises reasonably safe for the performance of the work." *Id.* at ¶ 9, 855 P.2d at 604. "This duty applies only to conditions or defects in the nature of hidden dangers, traps, snares or pitfalls that are not known or readily observed by the invitee." *Id.* The invitor is liable for injuries to its invitees if the invitor knew or should have known of the dangerous condition but failed to warn the invitee. *Id.* The invitor is not, however, an insurer of the safety of its invitees and is not required to prevent all injury occurring on the property. *Taylor v. Hynson*, 1993 OK 93, ¶ 16, 856 P.2d 278, 281.

¶ 7 Generally, an invitor does not have a duty to protect invitees from criminal acts by third persons. *Id.* at ¶ 17. However, the Oklahoma Supreme Court has recognized an exception to this general rule in "unique" or "exceptional circumstances." *Id.* at ¶¶ 19–20, 856 P.2d at 281–82. Exceptional circumstances are found where "the invitor knows or has reason to know 'that the acts of the third person are occurring, or about to occur.'" *Id.* at ¶ 17, 856 P.2d at 281 (quoting Restatement (Second) of Torts § 344 cmt. f (1965)). In other words, "[t]he invitor will not be responsible for injury unless the invitor has notice or could be charged with gaining knowledge of the situation in time to remove it or to give warning of its presence." *McClure v. Group K Enter., Inc.*, 1999 OK CIV APP 29, ¶ 4, 977 P.2d 1148, 1150.

¶ 8 The record is devoid of any evidence showing that Bob Howard knew that "the acts of the [intruder] were occurring or were about to occur." The evidence presented to the trial court showed that the incident occurred at night, when none of Bob Howard's employees were present. One of Golden Security's employees discovered A.J.'s body, but the assailant, Anthony Bush, had already left. Parents have simply failed to present any evidence that Bob Howard knew that the attack on A.J. was occurring or about to occur.

¶ 9 By focusing on the history of car thefts at Bob Howard's dealership, Parents attempt to show that Bob Howard knew or should have known that A.J. would be attacked. However, Parents fail to show that Bob Howard knew or should have known that this particular incident was occurring or about to occur. *See Folmar v. Marriott, Inc.*, 1996 OK CIV APP 51, ¶ 5, 918 P.2d 86, 88 ("A review of Oklahoma Supreme Court cases has found that a duty on the part of proprietors only arises when the situation involved an immediate event which the proprietor knew was occurring or about to occur.").

¶ 10 Moreover, Parents presented no evidence of criminal history foreshadowing this type of violent criminal activity. Although Bob Howard had experienced crimes such as car theft, vandalism, and embezzlement (in-

volving someone taking a car with permission and not returning it) at its lot, it had not experienced violent crimes on the premises. In particular, prior to A.J.'s murder, no security guard had been harmed by confronting anyone on the property. Bob Howard also presented evidence of limited criminal activity in the area surrounding the dealership, and a particularly low incidence of violent criminal activity. There is no evidence in the record to show that Bob Howard knew or should have known of the criminal activity of Anthony Bush that led to A.J.'s murder.

¶ 11 *McMillin v. Barton–Robison Convoy Co.*, 1938 OK 241, 78 P.2d 789, is instructive on the issue of Bob Howard's duty to protect A.J. from the criminal acts of a third party. In *McMillin*, the defendant's employee was murdered on the defendant's premises by robbers who were engaged in stealing an automobile. The defendant's premises were located within a town that allegedly had a high crime rate. Because cars had been stolen from the defendant's premises, the defendant hired guards to protect it. The Oklahoma Supreme Court refused to impose liability on the defendant, finding that (1) an employer does not have a general duty to protect its employees from the assaults of criminals, and (2) there were "no exceptional circumstances" surrounding the employee's death which would give rise to such a duty. *Id.* at ¶ 10, 78 P.2d at 790.

¶ 12 Parents also argue that Bob Howard increased A.J.'s risk of homicide by providing A.J. and the other security guards with access to all the vehicles on the lot. In particular they focus on the fact that Anthony Bush had worked for Golden Security and knew that the security guards at Bob Howard had access to the vehicles. Parents, however, fail to link this fact with the fact of the homicide—there is no evidence that Anthony Bush knew A.J. and other Golden Security employees had access to the cars, that Anthony Bush stole cars by using A.J.'s key, or that the access caused A.J.'s murder.

**B.** **Bob Howard's duty to provide A.J. with a reasonably safe place to work.**

¶ 13 Parents argue that Bob Howard breached its duty to provide A.J.

with a reasonably safe place to work. Generally, a hirer of an independent contractor will be liable to the independent contractor and its employees "for an injury occasioned by an unsafe condition of the premises encountered in the work, which is known to the property owner but unknown to the injured person." *Hatley v. Mobil Pipe Line Co.*, 1973 OK 42, ¶ 13, 512 P.2d 182, 185–86 (internal quotation marks omitted). However, the hirer's general duty is qualified by the rule that " 'one who engages an independent contractor to do work for him, and who does not himself undertake to interfere with or direct that work, is not obligated to protect the employees of the contractor from hazards which are incidental to or part of the very work which the independent contractor has been hired to perform.' " *Id.* at ¶ 16, 512 P.2d at 186 (quoting *Vecchio v. Anheuser–Busch, Inc.*, 328 F.2d 714, 718 (2d Cir.1964)). *See also Marshall v. Hale–Halsell Co.*, 1997 OK 3, ¶ 11, 932 P.2d 1117, 1119 ("as long as [hirer of independent contractor] did not interfere with or direct the work for [the independent contractor's employee], [hirer] was not obligated to protect him from hazards which were incidental to or part of the very work he was hired by the independent contractor to perform"); *Echazabal v. El Toro Meat Packing Corp.*, 506 So.2d 1100, 1101 (Fla. Dist.Ct.App.1987) ("the employee of an independent contractor cannot maintain a cause of action against a property owner where . . . the precise duty for which he was employed (guarding the premises) resulted in his injury"); *Turner v. Northwest Gen. Hosp.*, 97 Mich.App. 1, 293 N.W.2d 713, 715 (1980) (security guard's murder while on duty in emergency room "was the very reason [he] and his employer were hired, *i.e.*, to safeguard against criminal acts of violence"; "[i]t would be ironic to hold defendant hospital liable to an employee of the very security guard company it hired for protection"); *Carter v. Mercury Theater Co.*, 146 Mich. App. 165, 379 N.W.2d 409 (1985) (relying on *Turner* to hold that employer of security guard company was not liable to its employee who was murdered while performing his duties as security guard).

¶ 14 Here, A.J. was killed while performing the "very work" that Golden Security had been hired to perform—he was killed performing his job as a security guard. However, Parents argue that Bob Howard interfered with or exercised control over Golden Security and A.J.'s work by prohibiting A.J. from carrying a gun. We disagree. Golden Security offered three types of security services: unarmed, armed, and patrol. Bob Howard merely selected one of the types of security offered by Golden Security. There is no evidence in the record to show that, beyond selecting unarmed security, Bob Howard exercised any control over the manner in which the security was provided. Therefore, Bob Howard had no duty to protect A.J. from a hazard which was incidental to or part of the very work which Golden Security had been hired to perform.[1]

### C. Bob Howard's liability for the action of an independent contractor engaged in an inherently dangerous activity.

¶ 15 Parents also argue that Bob Howard cannot escape liability because it hired Golden Security to perform an inherently dangerous activity.[2] "The rule in Oklahoma is that a person who performs work through an independent contractor is not liable for damages to third persons caused by the negligence of the contractor *except where the work is inherently dangerous* or unlawful or where the employer owes a contractual or defined legal duty to the injured party in the performance of the work." *Williamson v. Fowler Toyota, Inc.*, 1998 OK 14, ¶ 7, 956 P.2d 858, 860 (emphasis added) (internal quotation marks omitted). "Inherently dangerous activity includes work that is obviously dangerous and work which in the ordinary course of events will cause injury to others if certain precautions are not taken." *Bouziden v. Alfalfa Electric Coop., Inc.*, 2000 OK 50, ¶ 24, 16 P.3d 450, 458.

¶ 16 The cases in Oklahoma which have recognized and used the "inherently danger-

ous" exception impose liability on the hirer of an independent contractor for injuries to *third parties.* For example, see *Copeland v. Lodge Enter., Inc.*, 2000 OK 36, 4 P.3d 695 (referring to "damages to third persons"); *Williamson,* 1998 OK 14, 956 P.2d 858 (same); *Hudgens v. Cook Indus., Inc.,* 1973 OK 145, 521 P.2d 813 (same). Oklahoma courts have not addressed the issue of whether this exception should be applied to impose liability for damages to an independent contractor or its employees. In other words, Oklahoma courts have not addressed the issue of whether employees of independent contractors should be treated as third parties.

¶ 17 Courts in other jurisdictions have wrestled with the issue of whether independent contractors and their employees are third persons to whom the hirer of an independent contractor engaged in an inherently dangerous activity owes a duty. For several logical and persuasive reasons, the majority of courts have declined to impose such a duty. *See Fleck v. ANG Coal Gasification Co.,* 522 N.W.2d 445, 450–51 (N.D.1994) (giving a comprehensive list of authorities adopting the majority and minority viewpoints). The policy reason behind the exception—assuring a remedy for persons injured by the inherently dangerous activity—is satisfied when the injured party, an employee of the independent contractor, may pursue workers' compensation benefits. *Id.* at 451. The worker's compensation scheme, "which affords compensation regardless of fault, advances the same policies that underlie" the inherently dangerous exception. *Privette v. Superior Court,* 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721, 723 (1980). "Furthermore, many courts recognize that, because the cost of workers compensation premiums are necessarily included in the contract price, the employer of the independent contractor has indirectly paid those premiums and should be protected by the exclusive remedy provision in the workers compensation laws." *Fleck,*

---

**1.** *McMillin,* 1938 OK 241, 78 P.2d 789, is also instructive on the issue of whether Bob Howard failed to provide A.J. with a reasonably safe place to work. Despite the defendant's knowledge of previous car thefts and its decision to hire guards to prevent theft, the Supreme Court determined

that the defendant did not fail to furnish the employee a safe place to work.

**2.** We assume for purposes of this argument that the job of a security guard is inherently dangerous.

522 N.W.2d at 451 (citing cases from Minnesota, California, Kansas, Kentucky, Maryland, Massachusetts, Missouri, Wisconsin, and Wyoming). Limiting the inherently dangerous activity exception to injuries to such third persons also prevents employees of independent contractors from reaping a windfall by avoiding the statutorily mandated limits of workers' compensation. *Id.* at 453; *see also Vertentes v. Barletta Co., Inc.*, 392 Mass. 165, 466 N.E.2d 500, 503 (1984).

¶ 18 Courts have also questioned a rule that would subject the hirer of an independent contractor to greater liability for injuries to the independent contractor's employees than the liability to which the hirer would be subjected if it used its own employees.

> '[T]he principal employer should be subject to the same liability when the work is performed by employees of an independent contractor as when the work is performed by the principal employer's own employees. If the principal employer uses his own employees, he is subject to worker's compensation payments, not tort liability. If the principal employer incurs tort liability when he hires an independent contractor, the principal employer would, for reasons of cost, prefer to use his own employees, who may be inexperienced, rather than employ an independent contractor skilled in the task. Thus, several courts conclude that to impose tort liability on the principal employer would have unfavorable consequences to the principal employer, the independent contractor, the employees and the public.'

*Fleck*, 522 N.W.2d at 452 (quoting *Wagner v. Continental Cas. Co.* 143 Wis.2d 379, 421 N.W.2d 835, 842 (Wis.1988)); *see also Privette*, 21 Cal.Rptr.2d 72, 854 P.2d at 727–28 (applying the inherently dangerous exception to employees of independent contractors "produces the anomalous result that a non-negligent person's liability for an injury is greater than that of the person whose negligence actually caused the injury"); *Tauscher v. Puget Sound Power & Light Co.*, 96 Wash.2d 274, 635 P.2d 426, 430–31 (1981). "The majority rule, which encourages the hiring of trained professionals with special expertise to perform work that is inherently

dangerous or encompasses a peculiar risk, better promotes the dual policy concerns of safety to the general public and safety to those performing the work...." *Fleck,* 522 N.W.2d at 452.

¶ 19 Valid reasons also exist for distinguishing between members of the general public and employees of independent contractors. Members of the general public are less likely to be aware of work site dangers and thus could not adequately protect themselves, while employees at the work site would possess knowledge of the nature of the project and its attendant risks. *Id.* at 453 (quoting *Zueck v. Oppenheimer Gateway Properties, Inc.*, 809 S.W.2d 384, 387–88 (Mo. 1991)).

¶ 20 We agree with the majority of jurisdictions and hold that the inherently dangerous exception, which prevents a party who hires an independent contractor to do inherently dangerous work from escaping liability for injuries to third persons, does not extend to employees of the independent contractor. Thus, Bob Howard is not liable for the death of A.J. while engaged in the allegedly inherently dangerous work of his employer, Golden Security.

### D. Bob Howard's liability for negligently hiring Golden Security.

¶ 21 Next Parents argue that Bob Howard negligently hired and supervised Golden Security. This argument is based on Parents' complaint that Golden Security had only been in business for a short time, allowed its former employee, Anthony Bush, to retain his security uniform, and did not equip A.J. with adequate communication equipment. As with Parents' argument that Bob Howard should be liable for hiring an independent contractor to perform an inherently dangerous job, we find that the hirer of an independent contractor is not liable to employees of the independent contractor for negligent hiring.

¶ 22 "One of the conditions under which the employer is relieved of liability for the negligent acts of an independent contractor which he has employed is when the employer has borne the duty which requires

him to exercise due care in selecting a competent contractor for the necessary work." *Hudgens v. Cook Ind., Inc.,* 1973 OK 145, ¶ 12, 521 P.2d 813, 816. While Oklahoma courts have not addressed the issue of whether this negligent hiring theory applies to employees of an independent contractor, other courts have done so and rejected such a theory under those circumstances. In *Chapman v. Black,* 49 Wash.App. 94, 741 P.2d 998 (1987), an employee of an independent contractor sued homeowners for injuries sustained when he fell from the roof of a house being constructed for homeowners. The employee sought to impose liability on the homeowners for negligently hiring the independent contractor for whom the employee worked. The Washington Court of Appeals refused to find that the homeowners owed the employee "a duty to protect him from the negligence of his own employer." *Id.* at 1004. " 'The general rule is that the owner of premises owes to the servant of the independent contractor employed to perform work on his premises the duty to avoid endangering him by his own negligence or affirmative act, *but owes no duty to protect him from the negligence of his own master.* ' " *Id.* (quoting *Lamborn v. Phillips Pacific Chemical Co.,* 89 Wash.2d 701, 575 P.2d 215 (1978)). *See also Woodson v. Rowland,* 92 N.C.App. 38, 373 S.E.2d 674, 678–79 (1988), *aff'd in part and rev'd in part on other grounds,* 329 N.C. 330, 407 S.E.2d 222 (1991); *cf. Wagner v. Continental Cas. Co.,* 143 Wis.2d 379, 421 N.W.2d 835, 838–39 (1988) ("negligent hiring does not by itself constitute an affirmative act of negligence upon which the liability of a principal employer to a contractor's employee can be based").

¶ 23 Thus, we conclude Bob Howard cannot be held liable to Parents for negligent hiring of Golden Security, A.J.'s own employer. Bob Howard did not have a duty to protect A.J. from the negligent acts of his own employer.

### CONCLUSION

¶ 24 Bob Howard did not owe a duty to protect A.J. from the criminal acts of a third party under the undisputed facts presented. There is no evidence in the record to support a finding that Bob Howard knew or should have known that the acts of the intruder were occurring or about to occur. Furthermore, Bob Howard did not breach its duty to provide A.J. with a reasonably safe workplace. Finally, the inherently dangerous exception to the general rule of nonliability of the hirer of an independent contractor and the theory of negligent hiring of an independent contractor will not be applied to impose liability for injuries to an independent contractor's own employees. Therefore, we affirm the order granting summary judgment to Bob Howard.

¶ 25 AFFIRMED.

¶ 26 REIF, C.J., and STUBBLEFIELD, J., concur.