2003 OK CIV APP 108

**Pauline L. ROGERS, Plaintiff/Appellant,**

v.

**BURGER KING CORPORATION, Carey Johnson Oil Company, Inc., and BRU Corporation, Defendants/Appellees.**

No. 99,402.

Court of Civil Appeals of Oklahoma, Division No. 3.

Nov. 21, 2003.

though 26 O.S.1981 § 8–109 precludes contesting the election."

Steven K. McKinney, Elrod Law Firm, Siloam Springs, AR, for Plaintiff/Appellant.

Rodney C. Ramsey, Britton, Gray, Ramsey and McCutcheon, P.C., Oklahoma City, OK, for Defendants/Appellees.

Opinion by KENNETH L. BUETTNER, Judge.

¶ 1 Plaintiff/Appellant Pauline L. Rogers appeals the summary judgment granted to Defendant/Appellee Burger King Corporation (Burger King), as well as the order dismissing Rogers's claims against Carey Johnson Oil Company, Inc. (Carey Johnson), and BRU Corporation (BRU). Because we find Rogers could prove no set of facts which would entitle her to relief in this case, we affirm the dismissal of the claims against Burger King and Carey Johnson. We affirm the dismissal of Rogers's claim against BRU because the Workers' Compensation Court had exclusive jurisdiction over Rogers's claim against her employer.

¶ 2 In her Petition, Rogers asserted that she was employed as a night porter at the Burger King restaurant on the Cherokee Turnpike in Delaware County. An EZ Go convenience store, which operated 24 hours a day, was located in the same building as the restaurant. Rogers alleged that on February 1, 2000, she reported to work at 10:00 p.m., the restaurant closed at 11:00 p.m., and the crew had left by 11:30 p.m.

¶ 3 Rogers alleged there was no restroom facility within the restaurant and that she therefore used the restroom located in the common area of the facility. Rogers alleged that at 4:30 a.m. on February 2, 2000, she left the restaurant to go to the restroom. While she was in the restroom, a man, later identified as Larry Aragon, entered the restroom, tore down the stall door and forcibly removed Rogers from the restroom and led her at gunpoint to a stolen car.[1] Rogers asserted that Aragon threatened to kill her, abducted her, and drove with her throughout eastern Oklahoma and western Arkansas for two hours, during which time he stopped the car twice in order to rape and sexually assault her.[2] Rogers escaped at 6:30 a.m. and police took her to a hospital in Siloam Springs, Arkansas.[3]

¶ 4 Rogers averred that BRU is the holder of a franchise purchased from Burger King, and that Burger King retains control and authority to approve the site location, design, and construction of the restaurant operated by BRU. Rogers also asserted that Burger King had control over the training manuals and training procedures of all franchise operations, including store security. Rogers asserted that Burger King retained sufficient control over the store to render it vicariously liable for any damages Rogers incurred. Rogers asserted that Carey Johnson owned and operated the EZ Go convenience store in the same building.

¶ 5 Rogers argued that "it was foreseeable that operating a retail facility that was open to the public 24 hours a day in a remote location created a hazard of criminal activity against any customer or employee...." Rogers argued that because of the remote location and the hours of operation, Burger King, Carey Johnson, and BRU had a duty to operate the facility in such a manner as to protect those lawfully on the premises from criminal activity. Rogers argued that Burger King, Carey Johnson, and BRU negligently breached that duty by failing to provide: 1) a panic button or other system to summon immediate help; 2) a surveillance system for the common areas of the facility; and 3) a system of established safety procedures to train employees in avoiding dangerous situations and responding to emergencies. Rogers argued that the negligence of Burger King, Carey Johnson and BRU was the proximate cause of the attack and the resulting injuries. Rogers also argued that the deci-

1. Rogers asserted that the EZ Go convenience store clerk heard the struggle and called 911, but that police did not arrive until 30 minutes later.

2. Aragon was arrested two days later and was convicted of rape, kidnaping, and forcible sodomy and is currently serving his sentences in the custody of the Oklahoma Department of Corrections.

3. Rogers asserted that: she sustained physical injuries in the attack for which she incurred medical expenses; she suffered emotional injury due to the fear of being infected with disease; the attack caused post-traumatic stress disorder; she was unable to work for a substantial period of time after the attack and had therefore suffered lost wages.

sion made by Burger King, Carey Johnson and BRU to operate a 24 hour business in a remote location with inadequate security measures showed a reckless disregard for her rights and she therefore asked for an award of punitive damages.

¶ 6 In its Answer, Burger King argued that Rogers had failed to state a claim on which relief could be granted, in part because it owed no duty to protect Rogers from criminal activity and had no notice of any condition which presented a potential danger to Rogers. Burger King also asserted that it was not vicariously liable for the negligence of the owner or operator of the restaurant. Burger King lastly asserted Rogers was contributorily negligent and had assumed the risk of criminal harm.

¶ 7 In their Motion to Dismiss, Carey Johnson and BRU acknowledged the allegations made by Rogers and asserted in addition that Rogers was an employee of BRU, Rogers left the restaurant to go to a public restroom, and was abducted by a person who was not affiliated with any of the defendants. BRU argued that the Workers' Compensation Court offered the exclusive remedy for Rogers's claims against her employer, BRU, citing 85 O.S.2001 § 12. Carey Johnson argued that Rogers had failed to state a cause of action against it because it owed no duty to Rogers. Carey Johnson argued that Rogers had claimed that it was liable because it employed one 18 year old female employee in its 24–hour convenience store. Carey Johnson argued that none of those facts gave rise to a duty of care to Rogers, who was not its employee. Carey Johnson also asserted that it owed no duty to provide a system of established safety procedures to train employees, noting that Rogers had asserted that Burger King had control over the training of its employees. Carey Johnson also asserted it had no duty in Oklahoma to install a surveillance system or a panic button alarm system, or to provide security personnel on site. Carey Johnson also argued that a business owes no duty to protect invitees from criminal assault. Carey Johnson asserted a business owner does have a duty to summon police if it knows that a criminal act is occurring, and Rogers's Petition indicated that

Carey Johnson's employee did call police and therefore did not breach that duty.

¶ 8 In her response, Rogers asserted that although BRU owned the building which housed the Burger King restaurant and the convenience store, BRU and Carey Johnson shared control over the common area of the premises, in which she was attacked. Rogers asserted that BRU had the burden of proving that the Workers' Compensation Act afforded her exclusive remedy against BRU. Rogers also asserted that whether her injuries arose out of and in the course of her employment was an issue of fact which precluded dismissal. Rogers argued that the risk of a criminal attack was a purely personal risk not related to employment, and that she therefore could proceed in the district court rather than the Workers' Compensation Court.

¶ 9 Rogers further argued that Carey Johnson had a duty to protect its invitees because it "should have reasonably foreseen the risk of an attack on a female using the restroom during early morning off-hours in a public place...." Rogers asserted that the unique circumstances of the location of the restaurant and convenience store on the turnpike gave rise to a duty to protect invitees from criminal harm.

¶ 10 The trial court issued its Judgment dismissing Rogers's claims against BRU and Carey Johnson August 13, 2002. The trial court found that the allegations in the Petition failed to show that Carey Johnson had breached any duty owed to Rogers. The trial court also concluded that Rogers's sole remedy against BRU was to proceed in the Workers' Compensation Court. The court therefore dismissed Rogers's claims against those parties. That dismissed order was not certified for immediate review.

¶ 11 Burger King filed its Motion for Summary Judgment August 26, 2002. Burger King argued that Rogers had failed to state a claim against it because it was not Rogers's employer, and that as a franchisor, it was not liable for criminal acts occurring on property not owned by Burger King. Burger King also argued that Rogers had failed to present any evidence supporting her contention that Burger King exercised sufficient control over

BRU to create an agency relationship which may have made Burger King liable under respondeat superior. Burger King also argued that because it was not Rogers's employer, it did not have a duty to offer self-defense training to her, nor did it have a duty to install surveillance equipment or a panic button alarm system, or to have security personnel on site in an adjacent public restroom. Lastly, Burger King argued that the owner of the building had no duty to protect its invitees from third-party criminal activity and by extension there could be no duty on Burger King, as a franchisor, to protect Rogers from a third-party criminal assault in the public area of the building.

¶ 12 In her Response, Rogers argued that Burger King retained sufficient control over the site location, the facility design, the training manuals, and training procedures for the Burger King restaurant at issue in this case, so that Burger King should be held vicariously liable for Rogers's injuries. The trial court issued its summary judgment order in favor of Burger King May 16, 2003.

¶ 13 In her Petition in Error, Rogers asserts three issues: 1) whether workers' compensation is the exclusive remedy available against BRU; 2) whether Carey Johnson owed a duty to Rogers under the facts of this case; and 3) whether Burger King exercised sufficient control over BRU and the premises involved to create a duty toward Rogers. None of the parties attached any evidentiary materials to their pleadings in support of, or in opposition to, dismissal or summary judgment.

[1–3] ¶ 14 In addressing an appeal from a decision dismissing a petition for failure to state a claim, we review de novo whether the petition is legally sufficient, taking as true all of the allegations in the petition, together with all reasonable inferences which may be drawn from them. *Crain v. Natl. Amer. Ins. Co.*, 2002 OK CIV APP 77, 52 P.3d 1035, 1038, citing 12 O.S.2001 § 2012(B)(6). A petition must not be dismissed for failure to state a claim unless the allegations indicate beyond any doubt that the litigant can prove no set of facts which would entitle him to relief. *Id.* In this case, Burger King couched its motion as one seeking summary judgment. However, because Burger King failed to attach evidentiary materials to support its motion, we will review the grant of the motion under the more rigorous standard required for orders dismissing a petition for failure to state a claim. The record on appeal contains no evidentiary materials. The parties have not indicated any dispute regarding the facts of the case.

■ ¶ 15 We first address the claims made against Rogers's employer, BRU. The Workers' Compensation Act provides for payment of compensation, without regard to fault, for injuries arising out of and in the course of employment. 85 O.S.2001 § 11. The Act further provides that the liability prescribed "shall be *exclusive and in place of all other liability* of the employer … at common law or otherwise, for such injury, loss of services, or death, to the employee,…." 85 O.S.2001 § 12 (emphasis added). Rogers relies on *American Management Systems, Inc. v. Burns*, 1995 OK 58, 903 P.2d 288, for her contention that her injuries did not arise out of and in the course of employment. In *Burns*, an employee traveled to Oklahoma to install computer software. During his time in Oklahoma, he checked into a local motel of his choice and was robbed and murdered at the motel. The Oklahoma Supreme Court determined that the murder occurred in the course of his employment, because he had traveled to Oklahoma as a work assignment. *Id.* at 291. The court found, however, that the murder did not arise out of his employment. *Id.* The court noted that an injury arises out of employment where it results from a risk which is reasonably connected to an assigned task. *Id.* The court found that the legislature had abandoned the "unknown assailant rule," which had previously allowed compensation for an attack by an unknown assailant occurring while the claimant was on the job and working. *Id.* at 292. The court concluded that there was no evidence that the risk of attack to the worker in *Burns* was greater than the risks encountered by the general public using lodging similar to that selected by the worker. *Id.* at 293.

¶ 16 An obvious distinction between this case and *Burns* is that the worker in *Burns* selected his own lodging for his off-duty time

during a business trip, while Rogers did not select the restroom in which she was attacked while on the job. Indeed, Rogers averred that she had no choice but to use the public restroom in the building—which was adjacent to the restaurant. In *Turner v. B Sew Inn*, 2000 OK 97, 18 P.3d 1070, the Oklahoma Supreme Court held that a parking lot in front of the employer's business constituted part of the employer's premises where the owner of the building provided the parking lot for its tenants and their employees, and the employer acquiesced in its employees using the parking lot. In *Turner*, the court held that because the injury, a fall on a wet sidewalk, occurred on the employer's premises, the *Burns* holding was inapplicable. *Id.* at 1072. The court noted its statement in an earlier case involving a parking lot injury: "when the employee's presence in the workplace parking lot is unquestionably employment related, there is no need for the court to further inquire into the arising out of prong as a separate issue." *Id.* at 1076, citing *Corbett v. Express Personnel*, 1997 OK 40, 936 P.2d 932. The court concluded that the employee's presence in the parking lot was employment related and that her fall, due to the neutral risk of wet weather conditions, arose out of her employment and was compensable. By analogy, Rogers's use of the on-premises restroom was employment related. An employee's "personal comfort mission" to an employer-provided restroom facility is within the course of employment, and an injury sustained while on such a personal comfort mission is compensable. See *Furr v. Wal–Mart*, 1998 OK CIV APP 147, 966 P.2d 1193, *cert. denied*.

¶ 17 In addition, we conclude that the Workers' Compensation Act affords the exclusive remedy against Rogers's employer, BRU, because the Oklahoma Supreme Court has held that a rape of an employee, though a willful and intentional criminal act, is an accident arising out of and in the course of employment. *Wal–Mart Stores, Inc. v. Reinholtz*, 1998 OK 11, 955 P.2d 223. In *Reinholtz*, the court quoted its earlier holding:

When a willful injury is inflicted by a third party, who is the aggressor, upon a workman discharging the tasks he is engaged to perform, and the assault is not motivated solely by personal animosity, wholly disconnected from the employment, the resulting injury is regarded as accidental and as having arisen out of and in the course of employment.

*Id.* at 224, citing *Mullins v. Tanksleary*, 1962 OK 239, 376 P.2d 590 (citations omitted). To the extent Rogers has a claim against BRU, it must be pursued in the Workers' Compensation Court.

¶ 18 Under the allegations presented in Rogers's Petition, Rogers's allegations fail to show the existence of a duty on the part of Carey Johnson or Burger King to prevent the harm which occurred in this case. Absent a duty, there can be no negligence. *Copeland v. Lodge Enterprises, Inc.*, 2000 OK 36, 4 P.3d 695, 700.

¶ 19 An employer has a duty to furnish its employees with a reasonably safe workplace, but that does not include a duty to protect employees from all criminal assaults. *McMillin v. Barton–Robison Convoy Co.*, 1938 OK 241, 78 P.2d 789, 182 Okla. 553 (disapproved in the context of landlord-tenant relationship by *Lay v. Dworman*, 1986 OK 85, 732 P.2d 455). In *McMillin*, an employee was murdered at work by robbers intent on stealing an automobile from the employer. The employee's widow charged the employer with negligence in failing to provide a reasonably safe place to work because the employer had located its business in a community infested with criminals. The court made the following statement regarding the argument that the location of the business created a duty to protect employees from criminal attack:

We are unable to see that an employer has a general duty to protect his employees from the assaults of criminals. We are likewise unable to see that there are any exceptional circumstances in this case which would give rise to such a duty. To so find would be tantamount to saying that the town of Picher is a condemned community. We would be saying, in legal effect, that those who live there and those who engage in business there are not exercising the prudence and judgment of ordinary

people. To hold what the plaintiffs want us to hold would result in saying that every business man in the town of Picher is guilty of negligence toward those he employs and is answerable to them for their damages suffered as the result of the act of some criminal.

*Id.* at 790–791. This declaration answers Rogers's argument that the remote location of her workplace gave rise to a duty on the part of all of the defendants to protect her from criminal assault. Rogers would have this court rule that every operator of a 24 hour business located on a turnpike, away from a city, is negligent as a matter of law.

■ ¶ 20 *McMillin* and cases since have made clear that location alone is not sufficient to give rise to a duty to protect an employee or an invitee from criminal harm. Such a duty will be found only where the employer or invitor knows or has reason to know that the criminal acts are occurring or are about to occur. When the invitor or employer knows that the invitee or employee is in imminent danger, the invitor must act reasonably to prevent injury. See *Taylor v. Hynson*, 1993 OK 93, 856 P.2d 278, 281; and *Folmar v. Marriott, Inc.*, 1996 OK CIV APP 51, 918 P.2d 86, 88. In *Folmar* we considered the duty of care owed by business invitees prescribed by the Restatement (Second) of Torts, § 344. That section, and Comment f following it, provide:

§ 344. Business Premises Open To Public: Acts Of Third Persons Or Animals

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

* * *

f. Duty to police premises. Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

*Folmar* involved an assault on patrons of a hotel bar in the parking lot outside the hotel. The plaintiffs argued that the hotel should have known from past experience that assaults in its parking lot were possible. 918 P.2d at 87–88. The court recognized, however, that the portion of Comment f which mentions past experience as giving rise to a duty of care had not been adopted in Oklahoma. *Id.* at 88. The court concluded that the rule remains in Oklahoma that a business invitor will not be liable for intentional or criminal acts of third parties unless the invitor has knowledge that the act is occurring or is about to occur and fails to act. *Id.* at 89.

¶ 21 Rogers's Petition did not allege that Carey Johnson or Burger King had knowledge that the attack on her was occurring or was about to occur. Nor did Rogers allege there had been prior attacks at the restaurant. Rogers alleged only that the attack on her was foreseeable because of the remote location of the restaurant and because of the late hours of operation. We have found no authority to support a finding of a duty based on location or time of day alone. Taking as true all of the allegations of Rogers's Petition, we find that Rogers can prove no set of

facts which would give rise to a duty to prevent the harm which occurred in this case. We therefore AFFIRM the trial court's orders dismissing Rogers's Petition for failure to state a claim for relief.

ADAMS, P.J., and JOPLIN, C.J., concur.