Matt ZIMPRICH, Larry Krein, Great Western Casualty Co., and Wintz Co., Plaintiffs and Appellants,

v.

Morris BROEKEL, Wayward Wind Transportation, Inc., a corporation, Defendants,

and

Hi–Tech Express, Inc., a corporation, Defendant and Appellee.

Civ. No. 930319.

Supreme Court of North Dakota.

July 26, 1994.

Randall J. Bakke (argued), of Smith Bakke & Hovland, Bismarck, for plaintiffs and appellants.

Daniel S. Kuntz (argued), of Zuger Kirmis & Smith, Bismarck, for defendant and appellee.

LEVINE, Justice.

Matt Zimprich, Larry Krein, Great Western Casualty, and Wintz Co. (the property owners) appeal from a summary judgment dismissing their claims against Hi–Tech Express, Inc. (Hi–Tech). We affirm.

On May 26, 1991, a fire at a Bismarck warehouse damaged property owned by Zimprich, Krein, R.K. Trucking,[1] and Wintz. The warehouse was divided into six units which were leased to various individuals. The fire started in Unit 4, which was leased to Morris Broekel and three other individuals. Broekel and his co-lessees, who were over-the-road truckers, used the warehouse for storage or maintenance of their truck-tractors. The warehouse lease was signed by Broekel in his individual capacity; Hi–Tech was not a party to the lease.

Broekel owned a 1988 Kenworth tractor, which he leased to Hi–Tech, an authorized common carrier, in accordance with the rules of the Interstate Commerce Commission. Under the parties' agreement, Hi–Tech provided trailers and loads for Broekel to transport with the tractor he leased to Hi–Tech. The agreement specified that Broekel, as owner of the tractor, was responsible for all repairs and was required to purchase separate insurance covering the tractor when en route to and from repairs.

---

1. Great Northern Casualty has been substituted as a party in place of R.K. Trucking.

On May 24, 1991, Broekel transported a load for Hi–Tech from Moorhead, Minnesota, to Bismarck, with an ultimate destination of Edmonton, Alberta. Broekel was experiencing problems with the tractor's air conditioning, and attempted to have it repaired in Fargo. When the repair shop could not work on it that day, Broekel proceeded to Bismarck.

Broekel went to the warehouse and unhitched Hi–Tech's trailer, leaving it in the parking lot outside the warehouse. Broekel stored his tractor in Unit 4 of the warehouse. The next day, May 25, Broekel visited his mother in a Bismarck hospital and traveled to Minot in another vehicle. Toward evening, he drove the tractor to K–Mart to purchase freon for the air conditioner. Broekel then returned to the warehouse and attempted to repair the tractor, using a trouble light to check for leaks. Shortly after midnight, he went to sleep in the tractor's sleeper compartment. While Broekel slept, the lit trouble light ignited combustible materials in Unit 4, causing a fire which damaged the warehouse and property in several units.

The property owners commenced this action against Broekel, Hi–Tech, and Wayward Wind Transportation, Inc.[2] The claims against Hi–Tech were based upon vicarious liability and negligent entrustment. Hi–Tech moved for summary judgment, asserting that Broekel was not acting within the scope of his employment at the time of the fire and that there had been no negligent entrustment. The trial court granted summary judgment dismissing the claims against Hi–Tech.

The property owners' claims against Broekel were tried to a jury, which found Broekel negligent and awarded damages of $183,526.96 plus interest. The property owners appeal from the summary judgment dismissing their claims against Hi–Tech.[3]

Our review is guided by well-established standards for summary judgment. Summary judgment allows for prompt and expeditious disposition of a controversy without a trial if there is no genuine issue of material fact, or if the law is such that resolution of any factual dispute will not alter the result. *Littlefield v. Union State Bank,* 500 N.W.2d 881, 883 (N.D.1993). Although disputed fact questions ordinarily preclude summary judgment, if the evidence is such that reasonable minds could draw but one conclusion the issue becomes one of law and summary judgment may be appropriate. *Sime v. Tvenge Associates Architects & Planners, P.C.,* 488 N.W.2d 606, 608 n. 2 (N.D.1992); *Belgarde v. Rosenau,* 388 N.W.2d 129, 130 (N.D.1986).

The property owners assert that the court erred in granting summary judgment because there were genuine issues of material fact regarding Broekel's status at the time his negligence caused the fire. The property owners argue that Broekel was an employee of Hi–Tech, thereby rendering Hi–Tech vicariously liable for Broekel's negligence, or, alternatively, that Broekel was an independent contractor over whom Hi–Tech retained sufficient control to impose liability under Section 414, Restatement (Second) of Torts. Hi–Tech responds that Broekel was an independent contractor when repairing or maintaining the tractor and that Hi–Tech had retained no control over the manner in which repairs were performed. Under either theory, the crucial question is whether there was a genuine issue of material fact as to Hi–Tech's authority to control the manner in which repairs and maintenance were performed.

Section 3–03–09, N.D.C.C., incorporates the doctrine of respondeat superior, providing that an employer is ordinarily vicariously liable for the negligence of an employee in the transaction of the employer's business. *See also Newman v. Sears, Roe-*

2. The property owners dismissed their claims against Wayward Wind before trial.

3. The property owners actually attempted to appeal from the order granting the motion for summary judgment. Although that order is not appealable, we have held that an attempted appeal from an order or memorandum decision will be treated as an appeal from a subsequently entered consistent judgment, if one exists. *E.g., Wheeler v. Schmid Laboratories, Inc.,* 451 N.W.2d 133, 135–136 n. 4 (N.D.1990); *Vanderhoof v. Gravel Products, Inc.,* 404 N.W.2d 485, 488 (N.D. 1987).

buck & Co., 77 N.D. 466, 43 N.W.2d 411, 414 (1950). The underlying rationale for the rule centers upon the employer's right to *control* the employee's conduct. *See Schwartz v. Ghaly*, 318 N.W.2d 294, 301 (N.D.1982); 53 Am.Jur.2d *Master and Servant* § 417 (1970). Accordingly, an employer's vicarious liability extends only to those acts done on the employer's behalf and within the scope of the employee's duties. *See Fargo Women's Health Organization, Inc. v. Larson*, 391 N.W.2d 627, 633 (N.D.1986); *Rickbeil v. Grafton Deaconess Hospital*, 74 N.D. 525, 23 N.W.2d 247, 257 (1946).

■ The property owners rely heavily upon provisions in the agreement between Hi–Tech and Broekel specifying that Hi–Tech had "exclusive possession, control and use of the [tractor] for the duration of the lease," and that Hi–Tech "assume[d] complete responsibility for the operation of said equipment during the term of the lease." These lease provisions are required by federal law when an authorized common carrier leases equipment. *See* 49 U.S.C.A. § 11107 (1994); 49 C.F.R. § 1057.12(c)(1) (1993). Hi-. Tech concedes that, when engaged in the *operation* of the tractor, Broekel was a "statutory employee" of Hi–Tech under federal law. *See, e.g., White v. Excalibur Insurance Co.*, 599 F.2d 50, 52–53 (5th Cir.), *cert. denied*, 444 U.S. 965, 100 S.Ct. 452, 62 L.Ed.2d 377 (1979); *Paul v. Bogle*, 193 Mich.App. 479, 484 N.W.2d 728, 732–733 (1992).

However, the "statutory employee" doctrine does not render the employer/carrier strictly liable for all torts committed by its drivers. *White v. Excalibur Insurance Co., supra*, 599 F.2d at 53; *C.C. v. Roadrunner Trucking, Inc.*, 823 F.Supp. 913, 919 (D.Utah 1993). Rather, the federal scheme merely creates a fictional employment relationship, and liability is then determined under applicable state law, including respondeat superior. *See White v. Excalibur Insurance Co., supra*, 599 F.2d at 53; *C.C. v. Roadrunner Trucking, Inc., supra*, 823 F.Supp. at 919–920; *Paul v. Bogle, supra*, 484 N.W.2d at 733. Liability in the present case thus turns upon respondeat superior, and, specifically, whether Broekel was acting within the scope

of his "employment" when he performed repairs on the tractor in the warehouse.

Much of the confusion in this case stems from the fact that Broekel, in effect, wore two hats in his relationship with Hi–Tech. Although under federal law and the parties' agreement, Broekel was an "employee" when operating the tractor for Hi–Tech's benefit, he also had separate responsibilities as the lessor/owner of the tractor. Several provisions in the parties' agreement unambiguously specify that Broekel was solely responsible for maintenance and repair of the tractor:

"5. Responsibility for Charges. The Contractor shall furnish and pay all costs of operation, including, but not limited to, the following:

\*   \*   \*   \*   \*   \*

"B. All maintenance costs and repairs.

\*   \*   \*   \*   \*   \*

"10. Insurance.

\*   \*   \*   \*   \*   \*

"B. Contractor agrees to carry bobtail and deadhead insurance coverage with respect to public liability and property damage ... as concerns all equipment hereunder, when used in any way by the Contractor or his employees for any personal use or private or unauthorized transportation such as but not limited to ... traveling to and from maintenance and repair sites....

\*   \*   \*   \*   \*   \*

"17. Contract–Owner. Contractor represents that he is the lawful owner or has lawful possession of the equipment described in this Agreement, which shall at all times during the term for this Lease, be maintained by the Contractor in good operating condition...."

Broekel's deposition testimony also established that Hi–Tech exercised no control over the maintenance and repair of the tractor. Broekel testified that he was not reimbursed for maintenance time or expense; he deducted maintenance and repair costs on his tax returns; time spent repairing the tractor was recorded as off-duty time in his log book; Hi–Tech did not control where or by whom

repairs were performed; and Broekel, in fact, performed much of the maintenance and repair work himself. Hi–Tech's lack of control is further demonstrated by Broekel's decision to proceed to Bismarck when repairs could not be made quickly in Fargo, and then to perform the work himself in warehouse space he leased personally for that purpose.

The property owners contend that a material issue of fact exists because Broekel testified in his deposition that on two occasions Hi–Tech's mechanics had performed minor repairs on Broekel's tractor:

"Q. Did Hi–Tech ever perform repairs or maintenance on your tractor at their facilities?

"A. Yeah, they did.

"Q. When was that?

"A. Well, let's see. Would have been—I think 1989. My cab-over Kenworth.

"Q. What was the reason why it was repaired by Hi–Tech's facilities?

"A. I'm trying to remember what the guy's name was. Curt, I believe, was running the shop then. I had a problem with the taillights and—wiring broke off. Snow buildup and stuff had got on it.

"And I was in the shop there or down in the yard and—I remember, I guess—if I remember right, I think Floyd was out or something like that and I was telling Floyd I got to stop somewhere and fix the taillights, put some wiring up on the taillights.

"Anyway, you know, he—you know, I—they didn't work back there. I mean, he looked into it and double-checked it, they didn't work and stuff there. And—I had a trailer then—hooked up to a trailer that was missing a brake light on one side, and I, in a joking way, had gone down to Curt and said, 'If you're that good at wiring, why don't you fix the taillights on my truck too?' So I just dropped the trailer right there and backed the truck in and Curt wired up my taillights again.

"Q. So just something he volunteered to do for you?

"A. Basically, yes. They never billed me for it. It wasn't something they had to do. They weren't in the form of doing my work for me, no.

"Q. Is that the only time you recall that they would have done maintenance on your—

"A. No, no. The guy after that, when I had my '88 in there one day, did an inspection on it. And I had an air line that looked pretty rough and—didn't leak any air, but looked pretty rough. And he was under and looked at that and he was telling me about it.

"And I said, 'Well, looks like I'm going to have to make a run either up to the shop or in somewhere and get it fixed.' I went up to the office and I came back and he handed me my piece of hose and he said, 'Here, saved you some time.'

"Q. So that again was something they didn't need to do?

"A. They didn't have to do it. This was something that they did on their own, I mean on their own free will. They were good people."

At best, this evidence shows that Hi–Tech infrequently assisted with very minor repairs as an accommodation and at Broekel's request. It does not, however, demonstrate that Hi–Tech exercised control over the manner and method of performance of maintenance and repairs to the tractor.

We also note that the property owners have not argued that the repairs performed here were in the nature of emergency roadside repairs, immediately necessary to keep the vehicle operational. Broekel was able to continue from Fargo to Bismarck without the repairs. Once in Bismarck, he unhitched Hi–Tech's trailer and parked the tractor in his leased warehouse space. He then went about personal business, returning late the next day to work on the vehicle. Under these circumstances, Broekel clearly was performing his independent contractual duty to repair the vehicle, and was not at that time an employee "operating" the tractor on Hi–Tech's business.

Although the question whether one is acting as an employee or independent contractor is ordinarily a fact question, it becomes a question of law when reasonable minds could reach only one conclusion on the evidence. *Fettig v. Whitman*, 285 N.W.2d 517, 519

(N.D.1979), *overruled on other grounds by Shark v. Thompson*, 373 N.W.2d 859 (N.D. 1985). In light of the clear and unambiguous contractual provisions, and the evidence before the trial court on the motion for summary judgment, reasonable minds could only reach the conclusion that Broekel was not acting within the scope of his employment at the time of his alleged negligent conduct. Accordingly, summary judgment on this issue was appropriate.

■ The property owners alternatively argue that, if Broekel was an independent contractor when performing repairs, Hi–Tech is still liable under Section 414, Restatement (Second) of Torts:

"§ 414. Negligence in Exercising Control Retained by Employer

"One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

Again, the crucial question under Section 414 is retention of control by the employer. Although the property owners characterize liability under Section 414 as vicarious, that provision, in fact, creates an independent duty upon employers who retain control over the manner of performance of the work to exercise that control with reasonable care. *Madler v. McKenzie County*, 467 N.W.2d 709, 711 (N.D.1991).

The property owners assert that a genuine issue of material fact regarding Hi–Tech's retention of control over repairs was created by Hi–Tech's requirement that Broekel periodically submit maintenance reports and have Hi–Tech's mechanics inspect the tractor. This assertion is effectively answered by Comment c to Section 414:

"In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."

We rejected a similar argument in *Schlenk v. Northwestern Bell Telephone Co.*, 329 N.W.2d 605 (N.D.1983). Bell had hired Aerial Contractors to remove abandoned aboveground telephone lines. Schlenk, an Aerial employee, was injured when he became entangled in a "wire winder" machine. The contract unambiguously provided that Aerial had "full control and direction over the mode and manner of doing the work." *Schlenk, supra*, 329 N.W.2d at 612. However, Bell retained the right to designate the order in which work was performed, to specify the quality of materials, to make changes regarding the work, to prohibit use of certain equipment, to inspect the work and materials, and to reject or take over the work if Aerial failed to conform to the terms of the contract. In affirming summary judgment, we held that the contractual provisions created no duty under Section 414:

"The rights reserved to Bell under the provisions of the contract in the instant case did not give Bell any control or right to control the method or manner of performing the details of the work, but, rather, generally related to Bell's right to make certain that the results obtained conformed to the specifications and requirements of the contract. We believe the mere retention of supervisory controls of this nature is not sufficient to impose liability upon Bell.... Because these provisions of the contract did not shift control over the method of work to Bell, but were simply meant to guarantee that the final results were in accord with Bell's plans, and because Bell exercised no actual control over the details of performing the work, § 414 of the Restatement is inapplicable in the instant case."

*Schlenk, supra,* 329 N.W.2d at 613 (citations omitted).

◼ Similarly, the facts relied upon by the property owners in this case do not give Hi–Tech the authority to control the method or manner of performing the details of repair work on the tractor, but gave it only a general right to inspect and to monitor by receiving reports to confirm that Broekel was properly performing under the contract. Accordingly, these facts do not demonstrate control sufficient to impose liability under Section 414.

The property owners assert that our decision in *Madler v. McKenzie County, supra,* requires reversal of the summary judgment entered in this case. Madler was injured when he fell from a scaffold while working on a bridge construction project. Madler's employer, Schwartz, had contracted with the Department of Transportation to construct the bridge, .and the Department contracted with McKenzie County to provide "engineering, supervision, and inspection" of the project. In Madler's action against McKenzie County alleging negligent exercise of retained control under Section 414, we reversed summary judgment dismissal of Madler's claims:

> "If McKenzie County exercised some control over the manner in which the contractor's work was being performed or provided supervision at the worksite so that Schwartz was not entirely free to do the work in its own way, then McKenzie County incurred a duty of care toward Madler under the principle stated in Section 414. This is a factual question about which reasonable persons could differ, and, therefore, it should be submitted to the jury."

*Madler, supra,* 467 N.W.2d at 714.

*Madler* is distinguishable from the present case. The basis of our holding in *Madler* was that the contract was ambiguous about which party was responsible for safety on the construction site and that there was evidence that the county was providing direct daily supervision of the work site beyond mere inspection. Under those facts, we held that there was a genuine issue of material fact regarding the county's retention of control over the method and manner of performance of the work.

The present case is more like *Schlenk,* in which we affirmed summary judgment because the contract unambiguously gave the independent contractor the right to control the method and manner of the work, and any control retained by the employer amounted to mere inspection to assure that the contract terms were properly performed. Here, the contract unambiguously provided that Broekel was solely responsible for performing the maintenance and repairs on the tractor, and any control retained by Hi–Tech consisted only of a general right to inspect and to monitor by receiving reports to insure compliance with the contract terms. Under these circumstances, reasonable minds could only conclude that Hi–Tech did not retain control over the method and manner of performance of repairs on the tractor. Accordingly, Hi–Tech had no duty under Section 414 as a matter of law and summary judgment was appropriate.

◼ Finally, the property owners assert that the court erred in granting summary judgment on their negligent entrustment claim. The basis of the property owners' claim is their assertion that it should have been foreseeable to Hi–Tech that Broekel might attempt repairs on the tractor which he was not qualified to make.

We have recognized a cause of action for negligent entrustment under Section 390 of the Restatement (Second) of Torts. *Barsness v. General Diesel & Equipment Co.,* 383 N.W.2d 840, 842 (N.D.1986). However, the property owners have not cited any cases or other authority to support their novel theory that a negligent entrustment claim may arise from a lessee entrusting the lessor's own property back to the lessor. Nor have the property owners drawn our attention to any evidence in this record raising an inference that Broekel was inexperienced or unqualified in the operation and maintenance of this type of equipment. A party resisting a motion for summary judgment may not merely rely upon the pleadings or unsupported allegations, but must present competent, admissible evidence which raises an issue of material fact and must, if appropriate, draw the

court's attention to relevant evidence in the record by setting out the page and line in depositions or other documents. *Kummer v. City of Fargo*, 516 N.W.2d 294 (N.D.1994). Summary judgment dismissal of the negligent entrustment claim was appropriate.

The judgment of the district court dismissing all claims against Hi–Tech is affirmed.

SANDSTROM, Acting C.J., and NEUMANN, MESCHKE and NORMAN J. BACKES, District Judge, concur.

NORMAN J. BACKES, District Judge, sitting in place of VANDE WALLE, C.J., disqualified.