2014 ND 182

Michael CROCKER and Debra E. Crocker, Plaintiffs and Appellants

v.

Alexander MORALES–SANTANA; Sergio Tire Collection Corp., a foreign corporation, d/b/a IFA Trucking; and Werner Enterprises, Inc., Defendants and Appellees.

No. 20140021.

Supreme Court of North Dakota.

Sept. 29, 2014.

Robert G. Hoy, West Fargo, N.D., for plaintiffs and appellants.

Nicholas C. Grant (argued) and Randall N. Sickler (appeared), Dickinson, N.D., for defendants and appellees.

KAPSNER, Justice.

[¶ 1] Michael Crocker appeals from a summary judgment dismissing his personal injury claim against Werner Enterprises, Inc. Crocker argues Werner is vicariously liable for Alexander Morales–Santana's negligent operation of a semi-tractor and trailer under the statutory employee doctrine and because Werner retained control over Morales–Santana's work. We affirm.

I

[¶ 2] Traill County Sheriff Michael Crocker sustained serious injuries in March 2009, when a semi-tractor and trailer driven by Morales–Santana hit a patrol car occupied by Crocker, which was parked on the northbound side of Interstate 29 near Hillsboro while he was helping stranded motorists during a winter storm. Morales–Santana owned the semi-tractor, which he leased to Sergio Tire Collection Corporation, doing business as IFA Trucking, a Florida corporation operating as an authorized motor carrier under federal motor carrier regulations. According to Morales–Santana, he was driving the semi-tractor as an independent contractor of Sergio Tire under Sergio Tire's federal motor carrier certificate of authori-ty. Morales–Santana was transporting freight from Omaha to East Grand Forks in a trailer owned by Werner, a Nebraska corporation.

[¶ 3] In 2007, Werner and Sergio Tire entered into a broker-carrier agreement, which stated Werner was a transportation broker of property authorized and registered with the Federal Motor Carrier Safety Administration of the Department of Transportation and Sergio Tire was a motor carrier registered and authorized by applicable federal and state regulatory agencies to provide transportation services in interstate commerce. The broker-carrier agreement said Werner agreed to offer shipments as a broker on a non-exclusive basis to Sergio Tire for transport as a motor carrier for Werner's customers. The agreement required Sergio Tire to comply with all applicable regulations for the transportation services and specified that Sergio Tire was an authorized motor carrier providing transportation services as an independent contractor under its motor carrier certificate of authority. The agreement required Sergio Tire to procure and maintain comprehensive general liability and automobile insurance in an amount not less than one million dollars per occurrence and required Sergio Tire to indemnify Werner for all liabilities arising out of the transportation of property.

[¶ 4] In 2007, Werner and Sergio Tire also entered into a trailer-interchange agreement for the interchange of Werner owned or controlled trailers or equipment with Sergio Tire for the purpose of utilizing Sergio Tire's transportation services for pickup or delivery of Werner controlled freight. The trailer-interchange agreement required Sergio Tire to ensure that each trailer was operated by a driver with a commercial driver's license complying with all applicable federal and state regulations. The agreement required Sergio

Tire to procure and maintain general liability insurance in an amount not less than one million dollars per occurrence and also required Sergio Tire to indemnify Werner for all damages arising out of Sergio Tire's use of Werner exchanged trailers except to the extent the damage was caused by Werner's negligent acts or omissions.

[¶ 5] Sergio Tire contracted with several commercial truck drivers, including Morales–Santana, as independent contractors to perform transportation services. According to Morales–Santana, he owned the tractor and leased it to Sergio Tire, he performed transportation services as an independent contractor for Sergio Tire, he hauled freight only for Werner in his capacity as an independent contractor for Sergio Tire, he received dispatches for hauling Werner controlled freight from Sergio Tire, and he did not contact Werner directly. According to an owner of Sergio Tire, Rosario Avila, Sergio Tire's independent contractors, including Morales–Santana, operated under Sergio Tire's federal motor carrier license and certificate of authority, Werner contacted her with information about the availability of loads, she contacted Sergio Tire's drivers regarding transportation services for Werner controlled freight, and Sergio Tire paid its drivers for the transportation services for Werner controlled freight.

[¶ 6] According to Skip Schollaert, a senior vice president of brokerage at the Werner Value Added Services' division of Werner, Werner Value Added Services provided broker services to shippers needing goods transported from one location to another and arranged for those goods to be transported by federally authorized motor carriers under the motor carriers' federally issued operating authority. According to Schollaert, the motor carriers used by Werner were independent contractors and provided their own drivers and power units, Werner maintained a list of drivers working for its independent contractor motor carriers, Werner assigned each driver a number to track its loads, and Werner did not request a particular driver from any of its independent contractor motor carriers. Schollaert's affidavit stated Werner communicated with the motor carrier's dispatch department with the location of a load that needed to be transported, the motor carrier's dispatcher assigned the load to a driver, Werner did not communicate with or track the drivers except when Werner's customers requested an occasional after hour update on the status of a shipment, and Werner did not give any instructions to the motor carriers and the independent contractors other than a "tour confirmation" sheet for a pickup and delivery time and location for a load. According to Schollaert, Sergio Tire was free to refuse to haul Werner controlled freight.

[¶ 7] Michael and Debra Crocker initially sued Morales–Santana and Sergio Tire for injuries sustained in the accident. When Sergio Tire's insurer liquidated, the district court granted a motion to withdraw by counsel for Sergio Tire and Morales–Santana. The court thereafter granted the Crockers' motion to amend their complaint to add Werner as a defendant. The Crockers alleged Morales–Santana was operating the semi-tractor and the trailer as an employee or agent of both Sergio Tire and Werner and the accident was proximately caused by Morales–Santana's negligence. The Crockers claimed that Sergio Tire and Werner were vicariously liable for Morales–Santana's negligence in operating the semi-tractor and trailer under the doctrine of respondeat superior and that all three defendants were also liable under a claim for a joint business venture.

[¶ 8] Werner denied liability, claiming it was a freight broker for the cargo being

hauled by Morales–Santana and Sergio Tire was an independent contractor and not Werner's employee or agent. Werner claimed Morales–Santana was an independent contractor or agent for Sergio Tire and Werner had no contract with or control over Morales–Santana.

[¶ 9] The district court granted Werner's motion for summary judgment and dismissed all the Crockers' claims against Werner. The court concluded Morales–Santana received directions from Sergio Tire and was not an employee of Werner. The court determined Werner was not Morales–Santana's employer merely because Werner let Sergio Tire use Werner's semi-trailer under the trailer-interchange agreement as part of its brokerage business and Morales–Santana was acting under an independent contractor agreement with Sergio Tire and his actions were controlled by Sergio Tire. The court also concluded Werner did not have the requisite control over Morales–Santana to be responsible for his actions and Werner was not involved in a joint venture with Sergio Tire and Morales–Santana.

[¶ 10] After a bench trial at which Morales–Santana and Sergio Tire did not appear, the district court found Morales–Santana was one hundred percent at fault for the accident, Sergio Tire was vicariously liable for Morales–Santana's negligence as his employer, and Morales–Santana and Sergio Tire were jointly and severally liable for $300,000 in damages sustained by Michael Crocker. The court also explained that Debra Crocker's claim for loss of consortium had been withdrawn because she had died while the action was pending.

## II

[¶ 11] The district court dismissed the Crockers' claims against Werner by summary judgment, which is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Farmers Union Oil Co. v. Smetana*, 2009 ND 74, ¶ 8, 764 N.W.2d 665 (quoting *Hasper v. Center Mut. Ins. Co.*, 2006 ND 220, ¶ 5, 723 N.W.2d 409).

## III

[¶ 12] Michael Crocker argues Werner is vicariously liable for Morales–Santana's negligence in the course of his employment because he was a statutory employee of Werner under applicable federal and state motor carrier safety regulations. Crocker argues the regulations' definitions of employee and employer eliminate the independent contractor defense and preclude a motor carrier from escaping liability for negligence of a motor carrier's independent contractors. Werner responds it is not liable for Michael Crock-

er's injuries because it operated as a broker and had no lease agreement with either Sergio Tire or Morales–Santana as contemplated by the regulations applicable to the statutory employee doctrine. Werner argues it is not a statutory employer of either Sergio Tire or Morales–Santana.

[¶ 13] In the context of this case, the interrelationship of the entities involved in the commercial trucking industry provides the backdrop for assessing the duties and liabilities for the negligent operation of a semi-tractor and trailer. *See* 1 David N. Nissenberg, *The Law of Commercial Trucking: Damages to Persons and Property,* § 7.01 (3d ed.2003). The overlapping roles of those entities may include conduct in the role of an authorized motor carrier, a tractor owner, a trailer owner, a driver, an employer, an employee, an independent contractor, a lessor, a lessee, a shipper, and a broker. *See id.* Under the doctrine of respondeat superior, if a tractor driver is an employee of another entity, the driver's employer is vicariously liable to third persons for the employee's negligence in the course of the employer's business. *Id. See* N.D.C.C. § 3–03–09; *Zimprich v. Broekel,* 519 N.W.2d 588, 590–91 (N.D. 1994). The underlying rationale for imposing liability on the employer focuses on the employer's right to control the employee's conduct. *Zimprich,* at 591. An employer generally is not liable for the negligence of the employer's independent contractor unless the employer retains sufficient control over the independent contractor's work. *Doan ex rel. Doan v. City of Bismarck,* 2001 ND 152, ¶ 20, 632 N.W.2d 815. *See* Nissenberg, at § 7.01.

[¶ 14] In the first half of the twentieth century, interstate motor carriers sought to immunize themselves from liability for negligent drivers by leasing tractors and trailers and nominally classifying the drivers as independent contractors. *See Transamerican Freight Lines, Inc. v. Brada Miller Freight Sys., Inc.,* 423 U.S. 28, 35–38, 96 S.Ct. 229, 46 L.Ed.2d 169 (1975); *American Trucking Ass'ns, Inc. v. United States,* 344 U.S. 298, 302–08, 73 S.Ct. 307, 97 L.Ed. 337 (1953); *Empire Fire & Marine Ins. Co. v. Guaranty Nat'l Ins. Co.,* 868 F.2d 357, 362 (10th Cir.1989); *White v. Excalibur Ins. Co.,* 599 F.2d 50, 52–53 (5th Cir.1979); *Paul v. Bogle,* 193 Mich.App. 479, 484 N.W.2d 728, 731–32 (1992); *Morris v. JTM Materials, Inc.,* 78 S.W.3d 28, 37–39 (Tex.Ct.App.2002).

[¶ 15] In 1956, Congress amended federal law to require interstate motor carriers to assume full direction and control of leased vehicles. Act of August 3, 1956, Pub.L. No. 84–957, 1956 U.S.C.C.A.N. 1163 (currently codified at 49 U.S.C. § 14102(a)(4)). The amendments were intended to ensure that interstate motor carriers would be fully responsible for the maintenance and operation of leased equipment and the supervision of drivers, thus protecting the public and providing financial responsibility for motor carrier accidents. *Morris,* 78 S.W.3d at 38. Federal motor carrier safety regulations were promulgated requiring an authorized interstate motor carrier who leases equipment to enter a written lease with the equipment owner stating the carrier-lessee shall have exclusive possession, control, and use of the equipment and shall assume complete responsibility for the operation of the equipment during the term of the lease. 49 C.F.R. §§ 376.11 and 376.12. *See also* 49 C.F.R. Subch. B (Federal Motor Carrier Safety Regulations). The leasing regulations, however, do not apply to trailers not drawn by a power unit leased from the same lessor. 49 C.F.R. § 376.21(d). Many of those federal motor carrier safety regulations have been adopted by reference in North Dakota. *See* N.D. Admin. Code § 38–04–01–02.

[¶ 16] The federal regulations create a statutory employee relationship between owner-lessors and authorized motor carrier-lessees. Nissenberg, *The Law of Commercial Trucking* at § 7.16. *See Zimprich,* 519 N.W.2d at 591. Under those regulations, an authorized motor carrier-lessee may be vicariously liable for negligent acts of a statutory employee under the federal statutory employee doctrine. Nissenberg, at §§ 7.01 and 7.16. *See Zimprich,* at 591 (stating " 'statutory employee' doctrine does not render the employer/carrier strictly liable for all torts committed by its drivers" and the "federal scheme merely creates a fictional employment relationship" with liability determined under applicable state law, including respondeat superior and whether driver was acting within scope of employment when tort committed).

[¶ 17] The federal regulations define an "employee" as:

> any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle), a mechanic, and a freight handler.

49 C.F.R. § 390.5

> An "employer" is defined in 49 C.F.R. § 390.5 as

> any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it.

[¶ 18] Crocker argues Werner is an employer under the federal regulations because it was engaged in a business affecting interstate commerce and it owned or operated the trailer involved in the accident, which is defined as a motor vehicle under 49 C.F.R. § 390.5. Crocker further argues both Sergio Tire and Morales–Santana were employees of Werner, because they were employed by Werner and they directly affected interstate commerce in the course of their employment. Crocker thus asserts Werner is vicariously liable for the negligence of its statutory employee, Morales–Santana, in the course of his employment.

[¶ 19] Although the definitions of employer and employee are broad, the statutory employee doctrine applies to lease situations to impose liability on an authorized motor carrier-lessee for the negligence of the owner-lessor and its driver. Nissenberg, *The Law of Commercial Trucking* at § 7.16. David Nissenberg describes the statutory employee doctrine in a treatise on the law of commercial trucking:

> The interstate trucking industry in the United States operates in large part through the use of leased vehicles. Many motor carriers engaged in the transportation of goods between states do not actually own more than a small portion of their fleets. In order to make up the difference, therefore, between what they own and what they need to carry out their transportation requirements, these trucking companies lease heavy-duty trucks and the services of their operators or the operator's employees from independent truckers who own and operate their own trucks. Typically, the owner-operator is paid a percentage of the amount received by the carrier-lessee from the shipper for moving the cargo. Out of this amount, he pays for his costs of operation. Under this arrangement, the independent owner-operator operates under the ICC or DOT authority granted to the carrier-lessee and performs the duties of pick-

ing up and delivering cargo which had been agreed to by the carrier-lessee and shipper as set forth in the freight bill or bill or lading covering the movement of a particular load.

The vehicle lease arrangement, which often covers a trailer as well, is carried out under the provisions of written leases, the terms of which have been mandated by the rules and regulations of the Interstate Commerce Commission, still in effect notwithstanding the abolition of the Interstate Commerce Commission.

. . .

These DOT leasing regulations place full responsibility for the control of the leased vehicles, equipment, and drivers on the carrier-lessee and is an obligation which may not be contracted away or delegated to another party. This has the effect of making the owner-lessor and his driver or other employees the statutory employees of the carrier-lessee during the term of the lease. The carrier-lessee then becomes vicariously liable as a matter of law for the actions of its statutory employees in the operation of the truck.

Nissenberg, at § 7.16, pp. 401–04.

[¶ 20] In the context of the statutory employee doctrine, other courts have considered issues about an entity's status as a motor carrier, an independent contractor, an employee, an employer, or a broker in factual situations analogous to this case. *See Harris v. FedEx Nat'l LTL, Inc.,* 760 F.3d 780, 783–85 (8th Cir.2014) (*affirming Harris v. Velichkov,* 860 F.Supp.2d 970, 978–81 (D.Neb.2012)); *Schramm v. Foster,* 341 F.Supp.2d 536, 547–50 (D.Md.2004).

[¶ 21] In *Schramm,* 341 F.Supp.2d at 547–50, the federal district court considered plaintiffs' claims for personal injuries against a broker under the Federal Motor Carrier Act and the Federal Motor Carrier Safety Regulations. The court deter-

mined the broker who arranged for transportation of freight by a contract motor carrier was not an employer of the negligent driver under 49 C.F.R. § 390.5 and had no obligation to ensure the driver's compliance with regulations pertaining to maximum driving hours because the broker did not own or lease a commercial motor vehicle. 341 F.Supp.2d at 547–48. The court also determined the negligent driver was not a statutory employee of the broker under the definition of employee in 49 C.F.R. § 390.5, because the plaintiffs failed to establish the broker acted as a motor carrier in the transaction, explaining:

> Motor carrier is defined in 49 U.S.C. § 13102(12) as "a person providing motor vehicle transportation for compensation." The term "broker" means a "person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2). 49 C.F.R. § 371.2(a) further distinguishes motor carriers from brokers: "Motor carriers, or persons who are employees or bona fide agents of carriers, are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport."

341 F.Supp.2d at 548. The court recognized a transportation entity may have authority to operate as both a broker and a motor carrier. *Id.* at 548–50. The court said the broker in that case did not accept responsibility to ship the freight under its motor carrier authority and the fact the

broker had authority to operate as a motor carrier under federal regulations was irrelevant to its role as a broker in the specific transaction in that case. *Id.*

[¶ 22] In *Harris,* 760 F.3d 780, 783–85, the plaintiffs were involved in an accident with a tractor-trailer negligently operated by Oleg Velichkov. When the accident occurred, "Velichkov was employed by Fresh Start ... driving a tractor leased by Mickey's Trucking Express ... to Fresh Start. The tractor was pulling two trailers owned by FedEx ... from FedEx's Cincinnati ... service center to its service center in Salt Lake City." *Id.* at 782. The plaintiffs sued FedEx, Velichkov, Fresh Start, Mickey's, and a married couple who owned both Fresh Start and Mickey's. *Id.* The federal district court granted FedEx's motion for summary judgment and eventually dismissed with prejudice the plaintiffs' remaining claims against the other defendants. *Id.*

[¶ 23] In the district court, the plaintiffs argued Velichkov was an employee of FedEx under the regulatory definition of employee. 860 F.Supp.2d at 981. The district court rejected the plaintiffs' argument, explaining:

> It is questionable whether that definition was intended to have the effect of fundamentally rewriting state tort law. But leaving that aside, the plaintiffs are misapplying the definition. No one disputes that Velichkov was an employee of *someone.* But who was his employer? The obvious answer is Fresh Start. The plaintiffs' argument fails because Velichkov was not an independent contractor with anyone. He had no contract with FedEx, and he was undeniably an employee of Fresh Start. So, it is Fresh Start, not FedEx, that is vicariously liable for his alleged negligence.

*Id.*

[¶ 24] The federal district court also rejected the plaintiffs' argument that FedEx had a nondelegable duty under 49 C.F.R. § 390.11, which generally requires a "motor carrier" to observe duties or prohibitions imposed upon a "driver." *Harris,* 860 F.Supp.2d at 978–81. The court determined that although FedEx was licensed as a motor carrier, it was not acting as a motor carrier in that case. *Id.* at 979. The court explained a transportation company may have authority to act as a shipper, broker, or motor carrier, and a court must focus on the specific transaction at issue and not other potential transactions. *Id.* The court construed the federal regulations together and rejected the plaintiffs' attempt to bootstrap FedEx into the status of a motor carrier, explaining that FedEx chose not to use its motor carrier authority to transport the cargo and shipped it via another authorized motor carrier, Fresh Start. *Id.* at 979–81. The court said the plaintiffs were not left without a remedy because Fresh Start was acting as the motor carrier in that case and federal law prohibits a motor carrier from operating without complying with minimum financial security requirements. *Id.* at 980–81.

[¶ 25] On appeal, the Eight Circuit Court of Appeals affirmed. *Harris,* 760 F.3d at 782–83. The court recognized a transportation company may have authority to act as a shipper, broker, or motor carrier and said the relevant inquiry was not whether FedEx acted as a motor carrier in other transactions, but whether it " 'acted as a motor carrier in the specific transaction at issue.' " *Id.* at 784–85 (quoting *Schramm,* 341 F.Supp.2d at 548). The court concluded FedEx was acting as a shipper in the transaction and "[b]ecause FedEx was not acting as a motor carrier, it had no duty—nondelegable or otherwise—to require that driver Velichkov observe his [Federal Motor Carrier Safety

Regulation] duties by reason of 49 C.F.R. § 390.11." *Harris,* at 785.

[¶ 26] Federal law provides for the registration of motor carriers and brokers involved in the interstate commercial trucking industry. *See* U.S.C. §§ 13902 (registration of motor carriers) and 13904 (registration of brokers). A motor carrier means a "person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(12). A broker means "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation ... as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2). Under 49 C.F.R. § 390.11, whenever a duty is prescribed for a driver or a prohibition is imposed upon the driver, the motor carrier must also comply with the duty or prohibition.

[¶ 27] Here, this record reflects Werner brokered the shipment of freight under the broker-carrier agreement with Sergio Tire, and Werner executed a trailer-interchange agreement with Sergio Tire to interchange Werner owned or controlled trailers with Sergio Tire. Werner had no contract or lease with Morales–Santana, and its status as a broker for the shipment does not make Sergio Tire or Morales–Santana an employee of Werner. Under 49 C.F.R. § 390.5, an "employee" is defined, in part, as "any individual." The regulations define a "person" as "any individual, partnership, association, corporation, business trust, or any other organized group of individuals." 49 C.F.R. § 390.5. Other courts have recognized that the use of the term "individual" in the definition of employee refers to human beings and not to corporations or other legal persons. *See Brown v. Truck Connections Int'l, Inc.,* 526 F.Supp.2d 920, 924–25 (E.D.Ark.

2007); *Illinois Bulk Carrier, Inc. v. Jackson,* 908 N.E.2d 248, 255–56 (Ind.Ct.App. 2009). Sergio Tire is a corporate entity and is not an "individual" and cannot be an "employee" of Werner under the plain meaning of "employee" in 49 C.F.R. § 390.5. Moreover, the statutory employee doctrine under the federal regulations is intended to prevent a "motor carrier" from using the independent contractor defense in lease situations to avoid vicarious liability for a claimed independent contractor's negligence. *See Perry v. Harco Nat'l Ins. Co.,* 129 F.3d 1072, 1074 (9th Cir.1997); *Price v. Westmoreland,* 727 F.2d 494, 496 (5th Cir.1984); *Morris,* 78 S.W.3d at 38. The regulations address entities conducting business as a "motor carrier," and differentiate between a motor carrier and a broker. *See* 49 C.F.R. § 390.11 et seq. (imposing obligations on "motor carrier").

[¶ 28] Crocker argues Werner's attempt to define itself as a broker rather than a motor carrier is unavailing. Under 49 U.S.C. § 13102(2), a "broker" means a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, provides, or arranges for transportation by motor carrier for compensation. A motor carrier is defined as a person providing motor vehicle transportation for compensation. 49 U.S.C. § 13102(12). Crocker has not provided any evidence indicating Werner was operating as a motor carrier in this case and its ownership of the trailer does not establish it was operating as a motor carrier-lessee. *See* 49 C.F.R. § 376.21(d) (stating leasing regulations do not apply to trailer not drawn by a power unit leased from the same lessor). Under the rationale of *Harris,* 760 F.3d at 783–85, and *Schramm,* 341 F.Supp.2d at 547–50, and the record in this case, we conclude Werner was operating as a broker and not as a motor carrier. We conclude the applicable

federal regulations for the statutory employee doctrine do not apply to Werner's operation under the broker-carrier and the trailer-interchange agreement with Sergio Tire. We conclude Werner's role as a broker does not make Sergio Tire or Morales–Santana an employee of Werner for purposes of the statutory employee doctrine. We therefore conclude the district court did not err in granting summary judgment on Crocker's statutory employee claim against Werner.

## IV

[¶ 29] Crocker argues that if Werner is not liable for Morales–Santana's negligence under the statutory employee doctrine, Werner is liable because it retained control over his work. Crocker argues the district court erred in concluding as a matter of law that Werner was not liable for Morales–Santana's negligence under Restatement (2nd) of Torts § 414 (1965), because Werner retained the right to control the method, manner, and operative details of Morales–Santana's work. Crocker claims the record demonstrates Werner retained control over Morales–Santana's actions and summary judgment was improper.

[¶ 30] Under North Dakota law, an employer of an independent contractor generally is not liable for the acts or omissions of the independent contractor. *Grewal v. North Dakota Ass'n of Counties*, 2003 ND 156, ¶ 10, 670 N.W.2d 336; *Rogstad v. Dakota Gasification Co.*, 2001 ND 54, ¶ 14, 623 N.W.2d 382; *Fleck v. ANG Coal Gasification Co.*, 522 N.W.2d 445, 447 (N.D.1994). However, Restatement (2nd) of Torts § 414 (1965) provides that an employer may be liable for an independent contractor's work if the employer retains control over the independent contractor's work:

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

[¶ 31] In *Fleck*, 522 N.W.2d at 448, this Court explained the degree of retained control necessary to impose a duty on an employer of an independent contractor requires the employer to control the method, manner and operative details of the independent contractor's work:

The liability created by Section 414 arises only when the employer retains the right to control the method, manner, and operative detail of the work; it is not enough that the employer merely retains the right to inspect the work or to make suggestions which need not be followed. Comment c to Section 414 explains the difference:

"In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."

[¶ 32] We conclude Crocker's claims about Werner's retention of control in this

case do not raise a factual issue. According to Morales–Santana, he hauled freight only for Werner in his capacity as an independent contractor for Sergio Tire, but he received dispatches for hauling the Werner controlled freight from Sergio Tire and he did not contact Werner directly. According to Rosario Avila, an owner of Sergio Tire, Werner contacted her with information about the availability of Werner controlled freight, she contacted Sergio Tire's independent contractors regarding transportation services for Werner controlled freight, and Werner provided Sergio Tire with a tour confirmation stating the pickup and delivery place and time for the freight. The role of Werner and its division, Werner Value Added Services, is consistent with the general right of a broker to provide basic direction for the transportation of freight by providing Sergio Tire with a tour confirmation for the pickup and delivery of the freight and the location of the freight. Although the tour confirmation provided some general direction for the result of the work, we conclude that direction does not raise a factual dispute about the level of controlling the method, manner, and operative details of Morales–Santana's work. *See Grewal*, 2003 ND 156, ¶¶ 15–21, 670 N.W.2d 336; *Fleck*, 522 N.W.2d at 448–49. We conclude the district court did not err in granting summary judgment on this issue.

V

[¶ 33] We affirm the summary judgment.

[¶ 34] GERALD W. VANDE WALLE, C.J., WILLIAM F. HODNY, S.J., and DALE V. SANDSTROM, JJ., concur.

DANIEL J. CROTHERS, J., concurs in the result.

[¶ 35] The Honorable William F. Hodny, S.J., sitting in place of McEvers, J., disqualified.